ALAMO MILLS COMPANY V. HERCULES IRON WORKS.

No. 48.

**1. Pleadings—Specifications.**—In an action for the contract value of machinery constructed by the plaintiff, but not completed within the time specified in the contract, in excuse for the delay the petition charged the defendant with obstructing the completion of the work, without stating facts constituting such obstruction. Exceptions urged to this general allegation should have been sustained. It was error to overrule the exceptions and admit testimony under the allegation excepted to.

**2. Profits as Basis for Damages.**—The law does not condemn profits as such as a measure of damages. The question is, would the loss of profits be the direct result of the breach of the contract declared on, and would such loss reasonably be supposed to have entered into the contemplation of the parties at the time of making the contract? See example.

**3. Measure of Damages—Profits.**—In a contract for construction of an ice machine by a day certain, it appeared that the machine was relied upon to furnish a given quantity of ice upon an existing contract. *Held*, that losses suffered upon such contract from the delay in the completion of the work were chargeable to the contractor, and formed a basis for recovery of damages. But under a general allegation of expected profits from the ice business during the season, and which were lost by the failure, etc., no recovery could be had.

**4. Extra Compensation.**—A contractor having fully completed his work upon a machine he had undertaken to construct, has the right to recover for any extra material or labor furnished upon request of the owner, or necessitated by his misuse of the machine after its completion, or its acceptance by the owner. See example.

**5. Evidence Incompetent.**—An itemized account of material and labor used in the negotiation of a contract is merged in a subsequent written contract, and the plaintiff suing for the contract price could not introduce such bill of items unless the defendant resisting payment had offered some part of its contents; there being no ambiguity or uncertainty in the written contract, nor fraud or mistake alleged as basis for such testimony.

**6. Charge—Partial Performance.**—Action by contractor against owner for contract price of machinery. The defendant pleaded that the machine had not been delivered by the time stipulated for, nor of the earning capacity called for in the contract. *Held*, error to refuse a charge that the owner retaining the imperfect machine was chargeable only with the reasonable value of the machine; that is, the contract price less the damages for deficiency.

**7. Testimony to Waiver—Admissions.**—Declarations by the president of the defendant company made after the delivery of machinery for the defendant, were admissible against it; the president having stated that the machine was satisfactory, was competent to prove a waiver of a test contained in the contract, and to which the machine had not been subjected.

**8. Opinion Testimony.**—An expert was properly allowed to testify, that from records kept of the daily products of an ice machine that the machine had been abused and injured by its use.

**9. Measure of Damages—Double Recovery.**—A defective ice machine was the subject of litigation between the contractor furnishing it and the purchaser. The machine was not furnished at the time specified in the contract. Damages for loss of profits upon a contract for delivery of ice contemplated by

the contractor when undertaking the work, are recoverable; but rents for the machinery during the delay can not be recovered save for the machinery over that necessary to fill the contract.

Appeal from Bexar.   Tried below before Hon. W. W. King.

.Barnard & Green and Denman & Franklin, for appellant.—1.  The court erred in overruling defendant's special exception, to the effect that the allegation in the petition, that defendant obstructed plaintiff in the performance of the contract, is insufficient, in that it does not allege what particular acts of obstruction defendant committed, there being no allegation in the petition charging defendant with any particular acts of obstruction, the petition only alleging in general terms that plaintiff was delayed in the construction of the machinery by the misconduct of defendant, and that defendant continually threw obstacles in the way of plaintiff, and prevented it from making the test as agreed upon, no facts being alleged.   The court also erred in admitting testimony under such defective allegation.   Holman v. Chriswell, 13 Texas, 38; Whitaker v. Record, 25 Texas Supp., 382; Mims v. Mitchell, 1 Texas, 446; Express Co. v. Darnell Bros., 62 Texas, 641; Morrison v. Ins. Co., 69 Texas, 359.

2.  A party injured by the breach of a contract is entitled to recover all his damages resulting therefrom, including gains prevented as well as losses sustained, provided they are directly caused or naturally result from said breach, and are sufficiently certain, both in their nature and in respect to the cause from which they proceed, as to be susceptible of proof by evidence legally admissible and sufficient in law.   Where there is a loss of profits occasioned by a breach of contract, such loss is held to naturally result from said breach, in a legal sense, whenever the parties to such contract took said loss into consideration when such contract was entered into, and contracted with reference thereto, or whenever it was known, prior to the breach of such contract, by the party subsequently breaking same, that a loss of profits would directly result from such breach, and he broke the contract with the knowledge of the necessary result of his breach.

3.  The right to recover loss of profits as damages for breach of a contract is mainly dependent upon the sufficiency of the evidence to establish that profits would have been realized from the performance of the contract, and that they are capable of being estimated with a reasonable degree of certainty.   The right to recover such damages, therefore, must always depend upon the facts of each case, and the court can not, upon demurrer, decide as a matter of law that the loss is too remote, or that the estimate will be too uncertain, to authorize a recovery in the case before it.   Wolcott v. Mount, 36 N. J., 262; White v. Miller, 71 N. Y., 118; Wakeman v. Mnfg. Co., 101 N. Y., 205; Daugherty v. Tel. Co.,

75 Ala., 168; Railway v. Hale, 83 Ill., 360; Bell v. Reynolds, 78 Ala., 511; Jones v. George, 61 Texas, 345; 1 Sedg. on Dam., secs. 171, 172, 174–479, 189, 190; 1 Suth. on Dam., 91–93; 2 Suth. on Dam., 488, 490, 492; 49 Texas, 275; 63 Texas, 381.

4. The court erred in permitting plaintiff to read the memorandum of prices and the calculation made by a witness upon the same in the negotions leading to the contract    Milliken v. Callahan County, 69 Texas, 210; Roundtree v. Gilroy, 57 Texas, 180.

5. Profits upon contracts existing between one of the parties and third persons, known to and in contemplation of the contracting parties when their contract is made, dependent upon the faithful fulfillment of the contract, may be recovered as damages, if susceptible of proof with reasonable certainty.   Jones v. George, 61 Texas, 345; Railway v. Joachimi, 58 Texas, 456; Booth v. Mill Co., 60 N. Y., 487; Sneed v. Foord, 28 L. J. Q. B., 178; Fox v. Harding, 7 Cush., 516; Melburne v. Belloni, 39 N. Y., 53; Passinger v. Thorburn, 34 N. Y., 634; White v. Miller, 71 N. Y., 133; Borries v. Hutchison, 34 L. J. C. P., 169; 1 Suth. on Dam., 84 et seq.; Field on Dam., secs. 375, 384; Sedg. on Meas. of Dam., 7 ed., 122, 218.

*Henry P. Drought* and *S. G. Newton,* for appellee.—1. While every material fact relied on by a party must be averred in pleading, it is never necessary to allege those circumstances which are the evidence of the facts on which the party relies as giving him his action.   Wells v. Fairbanks, 5 Texas, 582; Van Alstyne v. Bertrand, 15 Texas, 179.

2. In an action of damages of this character, not only must the damages be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, but they must be certain, both in their nature and in respect to the cause from which they proceed, and must not be speculative or contingent; and though they may be the ordinary, natural, and even necessary result of the breach, yet, if in their nature uncertain, they must be rejected.   Rental value while the machinery was idle by reason of the delay was the proper measure of damages, not the profits which might have been gained.   Stark v. Alford, 49 Texas, 260; Jones v. George, 56 Texas, 149; Railway v. Joachimi, 58 Texas, 456; Railway v. Hill, 63 Texas, 381; Railway v. Young, 60 Texas, 201; Griffin v. Culner, 16 N. Y., 490; Sutton v. McDonald, 60 Am. Rep., 484.

3. A contractor who fails to perform his contract by the time limited in the contract, can not be held liable for the loss occasioned to the party for whom the work is being performed, which loss is occasioned by reason of the inability of the party for whom the work is being performed to perform contracts entered into between him and third parties, even though the contractor may have known of the existence and terms of such other

contract at the time of entering into his own, unless he expressly agrees to such a rule of damages. Snell v. Collingham, 72 Ill., 161; Fox v. Harding, 7 Cush., 516; Griffin v. Culver, 16 N. Y., 490; Masterson & Smith v. Brooklyn, 7 Hill, 63.

4. The admissions of a party or his agent are admissible in evidence when offered by the adverse party. Latham v. Pledger, 11 Texas, 441; Wright v. Doherty, 50 Texas, 34; Railway v. Rountree, 2 Ct. App. C. C., sec. 339; Sayles' Civ. Stats., title 38, ch. 4, rule 33.

5. On questions of science, skill, or trade, persons of skill in those particular departments are allowed to give their opinions in evidence. Armendaiz v. Stillman, 67 Texas, 458; Railway v. Klaus, 64 Texas, 293.

COLLARD, Associate Justice.—The Hercules Iron Works, the appellee, brought this suit May 17, 1889, against the Alamo Mills Company, now known as the Crystal Ice Manufacturing Company, and by an amended petition, filed January 10, 1890, alleged, that on the 26th day of December, 1887, plaintiff entered into an agreement with defendant for the purpose of erecting an ice plant, consisting of two parts, with a daily capacity of forty tons of clear ice, to be produced from condensed steam, one half to be ready by March 1 and the other half to be ready by April 1, 1888, for which said Alamo Mills Company agreed to pay the sum of $13,485, the sum of $6000 to be paid when the first twenty-ton plant had been run fifteen days and demonstrated its ability to perform the work mentioned, and the balance to be paid after a like trial of the second plant of twenty tons, and its satisfactory performance of the work agreed upon for it.

That said plant was to be turned over in good order and condition by plaintiff to defendant, and if anything was necessary to the production of the forty tons of clear ice per day it was to be furnished by plaintiff without charge.

The petition further avers, "that plaintiff complied with its contract in every particular, furnished the machinery of the contract power, with the materials as agreed, and of the quality stipulated, and in every particular complied with its contract, with the exception that, owing to unforeseen circumstances, and the misconduct of defendants in refusing to furnish labor and material for making ice when the plant was ready, plaintiff did not have the plants producing ice until a few weeks after the date agreed upon; but plaintiff saved defendant from whatever loss it might have incurred thereby, and now is and always has been ready and willing to pay defendant whatever loss it sustained by reason of plaintiff not having the plant in operation on April 1, 1888, if in equity it should; and that when said plant was completed it was turned over to defendant in good order and condition. That defendant continually threw obstacles in the way of plaintiff in completing said plant, and prevented plaintiff making the tests agreed, and expressed at different times its sat-

isfaction with the plant, and though often requested, refused, etc., to plaintiff's damage $13,813.18 and interest from April 1, 1888.''

The petition further states, that after the plant was turned over to defendant and plaintiff's workmen had returned to their homes (in Chicago), defendant "grossly mistreated the plant," and used it so negligently that it was greatly impaired and became worthless, when defendant instructed plaintiff to repair the same, which it did, at an expense and cost for labor and material of the value of $1404, as shown by itemized account.

That after the contract, defendant instructed plaintiff to make the plant more solid and complete, and that defendant would pay therefor; that plaintiff did, as directed, make such improvements (not required to the production of forty tons of clear ice per day), of the reasonable value as set out in bill of particulars. The total of both accounts, beside the amount due on the first contract, amounts to $4262.79.

Prayer for judgment for amounts due as alleged.

Defendant filed general demurrer, and specially excepted to the sufficiency of the allegations in the petition that defendant obstructed the performance of the contract in time, without stating the facts constituting such obstructions.

Defendant also filed a general denial and a number of special answers:

1. A plea in reconvention for $80,000, loss of profits resulting from plaintiff's failure to furnish and construct the ice factory of the capacity agreed on, and from delay in erecting the same, the $80,000 being the loss of profits that would have been made during the season of 1888.

2. Plea in reconvention for $14,000, the alleged rental value of the premises for the year, lost by plaintiff's failure to perform the contract.

3. To recover $7000, rent of the machinery and premises as they were before plaintiff undertook to put in the new machinery, lost by plaintiff's alleged failure.

4. To recover $6000 paid plaintiff on the contract, under the belief that it would be completed, and showing that there was no alternative left defendant but to take charge of the machinery as left by plaintiff and to utilize it to the best advantage.

5. Plea of payment and setoff, $8502.82.

6. To recover loss incurred by defendant in furnishing one Kampman ice, pursuant to a contract made with him by defendant—a special loss to defendant resulting from plaintiff's failure.

Other matters of defense were set up.

The case was tried by a jury; there was a verdict and judgment rendered thereon for the plaintiff for $6825, with interest from June 30, 1888, at 8 per cent per annum. Plaintiff entered a remittitur of $2450 as rent of the plant from March 1, to June 30, 1888, leaving, as stated

in the order of remittitur, a judgment against defendant for $4375, and interest from June 30, 1888, at 8 per cent per annum.

Defendant appealed.

The contract to furnish and construct the plant by plaintiff, and defendant's agreement to pay for it, was in writing and is as follows:

"San Antonio, Texas, December 26th, 1887.

"Agreement made between the Hercules Iron Works of Chicago, and the Alamo Mills Company of San Antonio.

"The Hercules Iron Works hereby agree to furnish an ice-making plant complete, with a daily capacity of forty tons of ice, the same to include two tanks, with all coils, valves, pumps, distilling apparatus, filter, air pump, water coolers, charcoal filters, machinery for small water wheel, necessary change in the steam engine, well, condenser house, insulation, and all wood work connected with the plant, etc.

"One-half of the plant to be ready March 1, the second half by April 1, the same to be transferred to the Alamo Mills Company in complete working order for the sum of $13,485 and the cost of the freezing cans.

"The plant is to be two complete twenty-ton plants, capable of producing forty tons of clear ice per day.

"The Alamo Mills Company agree to pay all railroad freight on goods shipped to them by the Hercules Iron Works; to pay for the freezing cans when requested so to do by the Hercules Iron Works; to pay when the first twenty-ton plant has been run fifteen days and demonstrates its ability to perform the work mentioned, the sum of $6000; and to pay the balance, say $7485, after a like trial of the second plant of twenty tons and its satisfactory performance of the work agreed upon.

"Further, the Hercules Iron Works hereby guarantees that this plant will not require more than one hundred pounds, say $50 worth, of ammonia per month after the first charge has been put in; also guaranteeing the material and workmanship of the highest order; also that forty tons of ice from condensed steam can be made daily with this plant, with an expenditure of McAlester coal, or its equivalent, not exceeding six and a half tons.

"It is understood that this plant is to be complete in every respect; that it is to be turned over by the Hercules Iron Works in good order and condition; and if anything is necessary to the production of forty tons of clear ice per day by this plant, and has not been mentioned herein, it will be furnished without charge by the Hercules Iron Works.

"Alamo Mills Company, J. S. Lockwood, President.

"Hercules Iron Works, Chas. A. McDonald, President."

The first error assigned is addressed to action of the court in overruling defendant's special exceptions to the averment charging defendant with

obstructing the completion of the plant, without stating the facts constituting the obstructions.

We think that the allegation is too general and is subject to the special exception.

The plaintiff assumed the burden of showing that its admitted delay in completing the plant in the time required by the contract was owing to something done by defendant. The allegation should have stated what was done—what the obstructions were. Defendant had the right to know, by proper pleading, what acts or omissions it was charged with that interfered with the plaintiff in carrying out its agreement, so as to prepare such defense as there might be to the charge.

Neither the court nor the defendant could know what facts would be relied upon to sustain the charge, or what was intended to be proved to show that defendant had obstructed the completion of the plant in time. Defendant alleged that time was of the essence of the contract. This was reasonable, considering the purpose.

Plaintiff, anticipating this, attempted to excuse itself and make defendant responsible for the failure to comply with the contract in time. It should have stated the facts imposing this responsibility upon defendant, and not the mere conclusion. This rule of pleading is elementary. Thompson v. Munger, 15 Texas, 523; Ellis v. Singletary, 45 Texas, 27; Caldwell v. Haley, 3 Texas, 317; Morrison v. Ins. Co., 69 Texas, 353.

The allegation that the delay was caused by misconduct of defendant in refusing to furnish labor and material for making ice, was vague and unsatisfactory, and was only sufficient to admit under it the character of proof indicated, and it would be so limited. But clearly, if not allowed under this, no proof could be admitted under the allegation to which the exception was taken showing defendant's responsibility for the delay.

The court erred as stated in the assignment.

The record in this case is very voluminous, and there are some forty or more assignments of error presented in appellant's brief, some of which need not be separately considered. A decision upon one of a group will be sufficient to determine the rest. For example, all the evidence predicated upon the foregoing allegation objected to by defendant was improperly admitted, and the assignments of error thereto will be sustained without further notice. When the petition is amended, as it probably will be before another trial, such errors will not occur.

It is insisted by appellant that the court erred in sustaining plaintiff's exceptions to that part of the answer which set up loss of profits that would have been realized during the ice season from the 1st of March to the 1st of November, 1888, if plaintiff had furnished the plant for manufacturing ice in the time, of the power, and of the kind to produce the quality of ice stipulated in the contract.

That part of the answer set up, that defendant, as a corporation to manufacture ice in San Antonio, was, prior to the contract with plaintiff, extensively engaged in the manufacture of ice, and as such had a large and established trade that required forty tons of ice per day; that it owned and used for its business a valuable factory for producing ice, consisting of site, buildings, machinery, in San Antonio, of the value of $75,000, and it had contracted with one Kampman to deliver him 1000 tons of ice, by written contract (set out in full), for the consideration of $9000, to be delivered to him at the door of its factory in amounts as called for, not to exceed ten tons per day, delivery to begin on April 1, 1888, or if the mills should be running before that date, then the ice to be called for before said date at any time when the mills were in full operation; the contract dated December 3, 1887. That the principal season for selling ice in San Antonio begins the first of March and ends the first of November of each year. That the trade of defendant demanded a machine that would manufacture forty tons of ice daily. That with the view to meet the demands of its trade, and to carry out its contract, it became necessary to increase the capacity of its plant, to remove parts of its machinery and improve with other machinery, as advised by plaintiff, which machinery plaintiff proposed to furnish, and to effect such ends it entered into the contract with plaintiff on the 26th day of December, 1887, which is herein before set out in full. The legal effect of and obligation of plaintiff under the contract are then set out. It is then further alleged that the machines contracted for were manufactured solely by plaintiff, and defendant could not purchase them in any other market (the Chicago market).

That after the time for the completion of the machines by the contract, there was not time to procure other machinery and get the same in operation to produce ice for the season of 1888. That at the time of the contract, and before the first of March, plaintiff had notice of all the facts set out, and the contract was made with knowledge by the parties, and with reference to such facts, that by the agreement and the circumstances the time for the delivery of the machinery, tested and completed, was made of the essence of the contract; that though often demanded, plaintiff wholly failed to furnish the plants contracted for that would produce forty tons of clear ice per day; that pretending to comply with the contract, plaintiff furnished a machine that would not produce more than twenty tons per day, and that of an inferior and unmarketable quality; and this was not furnished until June 1, 1888. That the cost of operating it was greater than agreed, in labor, fuel, and ammonia. That during the delay defendant's machine was idle. That the ice factories in San Antonio could not supply the demands of their trades, and defendant could not purchase ice in San Antonio to supply its trade, and on account of the cost of shipment ice could not be purchased elsewhere and brought

to San Antonio and sold at a profit.   That by reason of plaintiff's failure
to furnish the plant contracted for, defendant could not make and dispose
of forty tons of ice per day.   That ice was worth in San Antonio during
each day of the season $10 per ton, and the cost of making ice on the
machine agreed to be furnished by plaintiff, during the season, would
have been only $1.50 per ton, whereby, by plaintiff's failure to perform
its contract, defendant has been damaged, etc.

The court below sustained plaintiff's exception to so much of this an-
swer as set up loss of profits as the measure of damages.

The right or not to recover profits for a breach of a contract does not
depend upon an arbitrary rule to be adopted by a court, but upon the
principles that should control the right.   The law does not condemn
profits as such as a measure of damages.   The question is, would the loss of
profits be the direct result of the breach, and would such loss " reasona-
bly be supposed to have entered into the contemplation of the parties at
the time of making the contract?"   Conjectural profits would not be al--
lowed, not for the reason that profits are proscribed, but because they are
uncertain; if they become sufficiently certain, are the direct result of the
breach, and the parties were in possession of such facts as would charge
them, as reasonably intelligent men, with the probable consequences of
the breach, then profits fall within the rule, and may be recoverable as
damages.   Griffin v. Colver, 16 N. Y., 489; 2 Suth. on Dam., 401, 402,
et seq.; Railway v. Hill, 63 Texas, 381; Jones v. George, 61 Texas, 345;
1 Sedg. on Dam., sec. 192.

Speculative damages are not allowed, whether of profits or other results.
Expected profits in business are generally too uncertain and remote.   But
every case will depend upon its own facts.   In this case, we think the al-
legations of expected profits from the manufacture and sale of ice during
the season would not be a sufficiently reliable and certain basis for esti-
mating the damages for failure to furnish the plant according to the con-
tract; but the profits that would have been made on the Kampman con-
tract may be recovered if proved as alleged.   The allegation makes them
ascertainable from elements known to the parties at the time the contract
was made.   Plaintiff, represented by McDonald, its president, knew that
defendant had made the contract with Kampman to furnish him 1000
tons of ice for $9000 paid, as well as the terms of the same as to time of
delivery; he, McDonald, knew all the conditions; that the plant he agreed
to furnish would be relied on to make this ice; he knew, it is alleged,
the cost of production of ice on his proposed machinery, $1.50 per ton,
and that there was to be no further expense on the part of defendant, as
the ice was to be delivered at the factory door.   It seems that there can
be no doubt but that the profits ascertainable from the contract were in
contemplation of the parties when they made the contract sued on.   The
contract sued on was made with special reference to the Kampman con-

tract, and that defendant would be entitled to profits to be had on the latter until it was completed during the time of the alleged delay. The general profits expected from the business lack the necessary elements of certainty of computation; the parties may have supposed there would be profits in the business, yet the amount could not have been reasonably determined, owing to the fluctuations of the market price, and other considerations. The price was fixed for the amount of ice to be delivered to Kampman.

We conclude that there was error in sustaining plaintiff's exception to so much of the answer as set up profits on the Kampman contract as damages for the alleged breach. This conclusion will also apply to the ruling of the court in sustaining plaintiff's exceptions to the sixth count in the answer, which sets up actual loss on the part of defendant in procuring ice at great expense for the Kampman contract. The cost of supplying the ice above what it would have cost if plaintiff had furnished the machinery contracted for would be the measure of damages, provided defendant exercised ordinary care in procuring ice for Kampman.

The court did not err in the charge to the effect that defendant could not recover rent for the time the construction was delayed if defendant had *waived* the time of performance of the contract. The assignment is, that there was no pleading or testimony to authorize the charge. The pleading might have been made more definite, but we think the point is sufficiently pleaded to admit testimony thereunder. Without intimating any opinion as to the weight of the testimony, we conclude that it was not improper to submit the issue. There was some testimony that the delay was caused by the attempted use of the Tainter process of producing steam, and that defendant consented to the trial of it. Defendant told Tainter that it would make him a present of $100 if he succeeded with the system. There are some other circumstances in proof which have a tendency to establish the proposition submitted in the charge, which the jury might have considered. It is not our province to determine the effect of the testimony offered; that was for the jury. We can determine the competency and admissibility of testimony and whether there was testimony or not, but its weight is left to the jury.

We are not prepared to say that there was testimony sufficient to warrant the court's charge as to defendant's liability for Tainter's services. He was employed by plaintiff, was in charge of the work, and was allowed to experiment with his system of using steam made in a vacuum—a cheap process if it could have been utilized in making ice; and it may be the defendant consented to the trial of its use. But defendant was not to construct the machine or be in charge of the work, and we are unable to find the testimony which shows that defendant was to pay for any part of Tainter's time before he left, in June. When he returned, in 1889,

to run the plant and to test its capacity, he was employed by defendant, but that is not the time in question.

Plaintiff was required to furnish the plant and put it in working order, with certain ice-producing power, for a price stipulated, and which price is sued for. While Tainter was working to accomplish this result, he was in plaintiff's employ, and there could be no extra charge for his services.

The item of charge for Tainter's services is: "S. B. Tainter's time, furnished defendant by plaintiff at defendant's request, from May 20 to June 20, 1888, thirty days, at $15 per day, $450." McDonald, plaintiff's president, testified that Tainter's services were for defendant's benefit, but that defendant did not request them.

The allegation was not sustained by the proof.

In regard to McDonald's time, traveling expenses, etc., made an item in plaintiff's account, we may say that defendant would not be liable for it if rendered for the plaintiff company in complying with its contract to furnish and construct the plant, as required by the written contract. If, however, the contract had been fully complied with, and he rendered other services under the alleged distinct verbal contract (if there was any in fact upon which defendant would be liable), if the charge was reasonable, defendant would be liable.

In regard to the item for "Davis' time, labor, and traveling expenses, from August 11 to September 25, inclusive, $732;" if the plaintiff had completed its contract to furnish the plant according to its terms, and defendant took charge of it, and while operating it, it was injured and impaired by negligent use of defendant, and upon request of defendant that plaintiff should repair it, Davis was sent by plaintiff to make the repairs, and did render the service as alleged, defendant would be liable for the reasonable value thereof; but if the plant was not fully completed according to contract, and defendant had not accepted the work as a full performance, and Davis was sent by plaintiff to make the machine operate according to the terms of the original contract, or if plaintiff was still bound to so complete its contract, defendant would not be liable for work and material so furnished.

In presenting the case to the jury, the distinction should be observed between the duty of plaintiff to fully comply with its contract, and for any extra material and labor, furnished upon request of defendant, or necessitated by the defendant's misuse of the machine after its completion or its acceptance as completed by defendant. Whatever work or expense may have been incurred by plaintiff in performing its contract or making it good according to its terms (unless waived by defendant) was provided for in the original contract, and its price fixed, and no extra charge could be made for any of it. But if extra work and material were furnished

after the plant had been completed according to contract and delivered to defendant, they would be a proper charge if declared on.

The memoranda of articles and prices made prior to the contract, and furnished by McDonald as estimated cost of the plant, allowed to be read by plaintiff, was improperly admitted in evidence, unless defendant had before offered some part of its contents. The contract itself was the final depository of the agreement of the parties, which could not be changed or modified by contemporaneous estimates or negotiations. Milliken v. Callahan County, 69 Texas, 210.

There was no ambiguity or uncertainty in the written contract; no fraud or mistake that authorized the introduction of the memoranda. 2 Whart. on Cont., 665.

Appellant assigns as error the refusal of the court to give the following requested charge:

" The jury are instructed that if they believe from the evidence that the machinery furnished by plaintiff was not tested by running same fifteen days and producing forty tons of ice per day, as provided in the contract, then plaintiff can not recover the contract price of same, unless you find from the evidence that defendant accepted same as being of the capacity called for in the contract; but if you believe that plaintiff did erect machinery which did not comply with the contract, and if you further believe from the evidence that defendant has taken possession of and used the same, then defendant must be charged with the reasonable value of the machine instead of the one contracted for."

Some such charge should have been given. If the machine was not of contract capacity, and it was left on defendant's hands, and it did not accept it as a compliance with the contract, it should not be required to pay the contract price for it, but the price it was reasonably worth—that is, the contract price, less the damages for deficiency, which would be the difference between the agreed price and the value of the machine left on its hands.

The court, over the objection of defendant, permitted McDonald, the president of plaintiff company, to testify that Lockwood, president of defendant company, told him, about the last of May or first of June, 1888, that he (Lockwood) was satisfied with the machine, and that it was not necessary to make a test. The contract required a test of fifteen days running of the machine to demonstrate its ability to perform the work agreed. Lockwood might have accepted the plant without the test. He could waive the test. The testimony was admissible.

There was no error in permitting the witness Davis to testify that the records of the plant, kept by the engineer while being run by defendant, showed an abuse of it. The record gave the amount of ice drawn each day from June 29 to August 12, 1888, and the starting and the closing temperatures for each day. It was in proof that the machine could

not be run successfully unless the temperature was considerably below the freezing point, and that a higher temperature indicated that more ice was being drawn from the machine than it was able to manufacture. Davis was allowed to state that the record of temperature showed that more ice was drawn than the machine could properly freeze, and that the tank was being robbed. · He was qualified to testify as an expert. There was no error in admitting his opinion on the issue of defendant having impaired the machine by negligent use.

There are a number of assignments of error that we have not specially noticed; but most of them have been disposed of, indirectly at least. We have sufficiently indicated our opinion of the rights and liabilities of the parties, and of the questions raised, to obviate error on another trial.

Some questions are necessarily eliminated by this decision in approving some portions of defendant's pleas that were stricken out below.

The right of defendant to claim profits as limited herein for the alleged breach of plaintiff's contract, need not create any confusion upon the subject of its right to rent, or the value of the use of the machine to be furnished in case there was a breach as alleged. Of course it is not intended that it could have a double recovery. There could be no rent for such part of the power of the machine as would be employed in supplying the Kampman contract during the time of delivery thereunder, profits being allowed under that contract; but rent would be the measure of damages for the balance of the power of the machine not so employed during the time of delay, if it should appear that the delay was a breach of the contract.

We are of opinion that the judgment of the court below should be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*

Delivered December 7, 1892.