### H. C. HARRELL v. JOHN McDUFFIE.

Decided May 6, 1910.

**1.—Compromise—Performance—Time Essence of Agreement, When.**

When a compromise or agreement to accept a less sum than the contract purchase price of an article in full satisfaction of the contract, is based upon the condition that the sum agreed upon should be paid on or before a certain date, a failure to pay on said date relieves the other party of the obligation to accept the same in full satisfaction of his claim, and restores to him the right to insist upon the payment in full of the original contract price.

**2.—Sale—Warranty—Definition.**

A warranty in a contract of sale is an agreement by the vendor that the thing he sells is of a certain kind, character or quality affecting its value to the vendee. No particular form of words is necessary to constitute such a

warranty. Any representation as to the quality made by the vendor for the purpose of inducing the vendee to buy and which did induce him to buy, amounts to a warranty.

**3.—Same.**

A statement in a letter by a manufacturer and seller of shingles to a prospective buyer, that his shingles were "mighty good shingles; they are as good as you can get anywhere," constitutes a warranty as to quality.

**4.—Warranty of Quality—Breach—Remedy.**

When an article sold under warranty as to quality proves to be wholly worthless, the purchaser need not return the article, and his retaining it will not preclude him from defending against an action for the price; and though the article is not entirely worthless for the purpose for which it was purchased, but simply of less value or quality than that warranted, retaining possession and using the article by the purchaser will not estop him from urging the partial failure of consideration or partial breach of the warranty in defense when sued for the price.

Appeal from the County Court of Nacogdoches County. Tried below before Hon. F. P. Marshall.

*E. B. Robb,* for appellant.

*King & King,* for appellee.

McMEANS, ASSOCIATE JUSTICE.—This suit was begun in the Justice Court of Nacogdoches County by John McDuffie against H. C. Harrell and T. J. Peterson for $198. being the alleged value of certain shingles sold by Peterson to Harrell, the account for which was transferred by Peterson to McDuffie and its payment guaranteed by Peterson. From a judgment rendered in the Justice Court an appeal was prosecuted to the County Court, where, upon a trial *de novo* before the court without a jury, a judgment was rendered in favor of plaintiff against both defendants for the sum of $198, the amount sued for. From that judgment the defendant Harrell only has appealed.

In the County Court the defendant Harrell answered in writing denying that he owed the plaintiff anything, but admitted that he owed his co-defendant, Peterson, $170. for shingles, and tendered said amount to plaintiff in full settlement of the account. He further pleaded as follows:

"Further, this defendant says, that on or about the 1st day of October, 1907, he purchased from defendant T. J. Peterson one car load of pine shingles, to be of hearts and saps and to be 'mighty good shingles, and as good shingles as could be bought anywhere,' and that upon the faith of said representations this defendant agreed to purchase thirty thousand heart shingles and eighty-two thousand sap shingles to be shipped to said defendant at Lufkin, Texas; that at the time said shingles were delivered by defendant Peterson at the town of Lufkin, this defendant having explicit confidence in the statement of said Peterson that said shingles were 'mighty good shingles, and as good as could be bought anywhere,' had said shingles unloaded from the car; that soon thereafter this defendant learned

that said shingles were of an inferior grade and not salable because of their imperfect shape, size, and manufacture of same. and were not such shingles as said Peterson represented them to be, and that they were not worth the price agreed upon, but that said shingles were worth only the sum of $100; that at the time he learned of the inferior grade of said shingles, he notified said defendant, Peterson, that said shingles were not such as he had recommended them to be, and not such as this defendant had bought; that said Peterson first sent his agent, who inspected them and reported the condition to said defendant, Peterson, and that later said Peterson came to Lufkin and made contract with this defendant to accept the sum of $170 in full settlement for same; and that by reason of this contract with said Peterson this defendant used such portion of said shingles as he could dispose of and the balance he now has; that he has always been ready and willing to pay said sum of $170 for same, although said shingles are not worth said sum, and were not at the time they were received by this defendant."

To this answer the plaintiff, by supplemental petition, replied as follows:

"Specially answering herein, this plaintiff says that if the shingles in fact were not as represented to the defendant Harrell when sold to him, that the same were shipped to him to be delivered at Lufkin, Texas, where he then resided, and that the imperfect condition of the shingles, if any, was patent and known to the defendant Harrell before he accepted same, and that the defendant did accept same, and that he knew of the condition of same at the time; therefore, this plaintiff says that the defendant Harrell is estopped from pleading a breach of warranty as to the quality of said shingles.

"Further specially answering herein, or replying thereto, this plaintiff says, if any agreement was ever made by and between the defendant Peterson, and the defendant Harrell, by terms of which the amount due this plaintiff was to be settled for $170, that the same was made by said Peterson without the authority or consent of this plaintiff, and without any agreement as to this plaintiff to make said settlement; and he further says, that if it should be held that he is bound to this agreement and that the same was made with his consent, then the same was a conditional agreement and it was understood by the defendant Harrell that the $170 must be paid by December 1, 1907. This was the agreement, if there was any, for the settlement of the debt for a less amount than due, the only consideration for which was the agreement of said defendant Harrell to pay said sum on December 1, 1907, thereafter, and therefore the date of the payment of the said $170 was of the essence of the agreement and the consideration for said agreement; and this plaintiff would show to the court that said defendant Harrell did not pay the $170 on December 1, 1907, as per said agreement, and did not offer to pay the same until the 12th day of January thereafter, and until this cause had been placed in the hands of an attorney for collection."

Appellant by his sixth and seventh assignments of error complains of the court's first and second conclusions of law, which are as follows:

"1.   The defendant Harrell knowing of the defects in the shingles

when they were offered for delivery, the same being patent and apparent, and accepting the same with knowledge of this fact, I conclude, as a matter of law, that he is estopped from pleading a breach of warranty as to the quality of the shingles."

"2.   There being no consideration for the agreement of the defendant Peterson as a representative of the plaintiff, to accept a less amount than the sum due upon the contract price in settlement of the whole, other than to secure payment at the earliest date possible, I conclude that the time at which the $170 was to be paid was the essence of the agreement to accept the $170 in satisfaction of the amount due, and the defendant Harrell not having offered to pay said amount on December 1, 1907, can not now satisfy the amount due by the tender of $170."

The facts leading up to this suit may be briefly stated as follows: The defendant Harrell desiring to buy a carload of shingles wrote a letter of inquiry to T. J. Peterson, who was engaged in the manufacture of shingles, and received from him the following letter in reply:

"I can fit you up any time with a car of saps loaded on the car at $1.50, and they have never had a drop of rain on them, and they are very light; or next week I can let you have a mixed car of heart and sap at $2.50 a thousand. They are mighty good shingles. They are as good as you can get anywhere, and if you want them let me know at once, for I can't keep heart shingles. They sell as fast as I can cut them."

Harrell, relying upon the representations of quality as contained in the above letter, ordered a carload of the mixed sap and heart shingles, which were shipped to him by Peterson. which were to be paid for upon delivery; and, upon their arrival at Lufkin, he began to unload and deliver them to his customers to whom he had made sales pending the arrival of the shipment. The shingles were not as good as represented to be, and were, in certain respects, defective in their manufacture. However, Harrell, with knowledge of the defects, received the shingles and sold as many of them as he could, and stored the balance. After Peterson shipped the shingles he transferred and assigned his account for the same against Harrell to the plaintiff McDuffie, and guaranteed its payment. When the question of the quality of the shingles arose Peterson, acting for McDuffie, went to Lufkin to adjust the matter, and it was then agreed between Harrell and Peterson, representing McDuffie, that the latter would accept and Harrell would pay $170 in full settlement of the account. provided said amount was paid on or before the first day of December, 1907. Harrell did not pay said sum on said date, nor did he offer to pay the same until the 12th day of January, 1909.

Appellant contends, in substance, that under the facts of this case the time agreed upon to pay the $170 was not of the essence of the contract, and the court erred in holding to the contrary; and that inasmuch as he at a later date, tendered that amount to plaintiff and also tendered said sum in court, the trial court should have required the plaintiff to accept the same in full discharge of the claim

and of his liability. This contention, we think, is not tenable. The court found as a fact that the agreement to accept a less sum than the contract price of the shingles was based upon the condition that the amount should be paid on or before December 1st, and this finding is supported by the evidence. Appellant's failure to pay within the time agreed upon relieved the appellee of the obligation to accept the $170 in full satisfaction of the account, and restored to him the right to insist upon the payment in full of the contract price for the shingles.

But we think the court erred in his first conclusion of law in holding that Harrell, knowing of the defects in the shingles when tendered to him for delivery and having accepted them with knowledge of the defects, is estopped from insisting upon a breach of warranty as to quality. A warranty in a contract of sale is an agreement by the vendor that the thing he sells is of a certain kind, character or quality affecting its value to the vendee. No particular form of words is necessary to constitute such a warranty. Any covenant, promise or assertion of the vendor concerning the quality of the article sold, if relied upon by the vendee and understood by both parties as an absolute promise or assertion and not a mere expression of opinion, will amount to a warranty. Any representation as to quality made by the vendor on a sale for the purpose of inducing the vendee to purchase, and which did induce him to purchase, amounts to a warranty. Words and Phrases, title "Warranty."

Tested by these rules we think that there can be no question that the statements made by Peterson in his letter to Harrell to induce him to purchase the shingles, that "They are mighty good shingles; they are as good as you can get anywhere," constitute a warranty as to their quality. That Harrell relied upon the representations and was induced thereby to purchase, and that the shingles were not the quality represented, we think the evidence aboundantly shows. The question then arises, did Harrell, by accepting the shingles with knowledge that they were not of the quality represented, waive the warranty, or was he estopped from asserting the warranty in defense of the action for the price? In Hayden v. Houghton, 24 S. W., 804, the rule on this subject is stated thus: "We understand the law to be on the question of warranty that relates to the quality of the article sold, that, if it is wholly worthless, the purchaser need not return the article, and his retaining it does not preclude him from defending against an action for the price. If the article is worthless for the purpose for which it was purchased, but is simply of less value or quality than that warranted, retaining possession and using the article by the purchaser would not estop him from urging the partial failure of consideration or partial breach of the warranty, in defense *pro tanto*, when sued for the price. Brantley v. Thomas, 22 Texas, 275; Wright v. Davenport, 44 Texas. 165." See also Aultman & Taylor Co. v. Hefner, 67 Texas, 54 (2 S. W., 861); Bryan Cottonseed Oil Mill v. Fuller, 57 S. W., 924; Tripis v. Gamble, 28 S. W., 245.

For the error indicated, the judgment of the court below must be reversed and the cause remanded. If upon another trial the defendant shall prove that the shingles were not of the grade warranted by the

seller, and that the value of same, at the time and place of delivery was less than those he contracted to buy, he should be allowed an abatement of the contract price equal to the difference between the contract price of the shingles ordered and the value of those delivered.

Appellant insists that inasmuch as an adjustment of the amount owing by him had been made by his agreeing to pay $170 in full settlement for the shingles, and this sum had been tendered to plaintiff before and at the time of the trial, that this court should reform the judgment of the court below, so as to only allow a recovery of said sum against him, and that the judgment as so reformed should be affirmed. This we will do if the appellee, within twenty days from filing of this opinion, shall remit the difference between the said sum of $170 and the amount recovered in the court below; otherwise, the judgment will be reversed and the cause remanded.

*Reversed and remanded*