Hurlbut, J.
This case is appealed from the district court of Larimer county, and is founded upon an alleged breach of warranty with respect to the sale and purchase of a steam shovel. All the issues of fact were sharply contested at the trial, and the testimony was decidedly conflicting concerning the same. The jury having found in favor of plaintiff, and there appearing to be sufficient evidence to sustain the verdict, we are concluded thereby, under the well settled rule in this jurisdiction that when there is sufficient evidence to sustain a verdict founded upon conflicting testimony the same will not be disturbed. We have carefully considered the instructions of the court, given and refused, and are satisfied that, taking them as a whole, the action of the court in giving or refusing the same is free from reversible error, with the exception of instructions number eight given by the court and number seventeen refused. Therefore, as we view the record, assignments of error numbered twenty-six and *112 thirty-two present the decisive matters for consideration on this appeal.
A written contract of warranty upon which the action is based consists of two documents, one executed August 28,1906, the other September 3, 1906. The first reads as follows:
“The Water Storage & Supply Co.,
“Fort Collins, Colo.
“Gentlemen: We offer you a 15-ton second-hand Bucyrus Shovel, 1%-yard Dipper standard guage trucks in good working condition, for the sum of $5,200.00, Fifty-two Hundred Dollars, F. O. B. Tacoma, Wash., less 2 per cent discount for cash. (This offer is subject to prior sale.) We also will supply you with competent man to put same in operation and educate your employes in operation thereof.
“Tours respectfully,
“S. G. SHAW & CO.,
“Per A. R. Foxley,
“1721 Arapahoe Street, Denver.”
The second as follows:
“Sept. 3, 1906.
“The Water Supply & Storage Co.,
“Fort Collins, Colo.
“Gentlemen: Referring to Bucyrus Steam Shovel No. 102, for which you have placed your order with us, we would say that we hereby guarantee the same to be in good working condition. The Boiler having been tested to 100 pounds working pressure, and all the machinery inspected and in good repair and in as good condition as possible for a second-hand' shovel, and in event of not proving so will refund all money paid by you on demand.
“S. G. SHAW & CO.,
“Per A. R. Foxley,
‘ ‘ Representative. ’ ’
The court instructed the jury that these two instru *113 inents constituted the written contract of sale between the parties, and we think properly. Appellants insist that a letter written by them September 7, 1906, and directed to the appellee company, which contained certain specifications concerning the shovel, should also be considered as part -of the contract. We do not agree with appellants in this contention. The letter and specifications referred to were written and mailed to appellee four days after the contract had been consummated. There is no showing in the record that this was to be considered by the parties as part of the contract.
As will be noticed, the contract price of the shovel was fifty-two hundred dollars ($5,200.00), f. o. b- Tacoma, Washington, four thousand dollars ($1,000.00) of which was paid by appellee on September 6, 1906. The important and decisive question before the court is as -to the proper construction to be given the contract, and particularly the clause found in the letter of September 3rd, viz: ‘ ‘ and in the event of not proving so will refund all money paid by you on demand. ’ ’
It seems to be the universal rule that 'in construing a written contract the courts will endeavor to arrive at the intentions of the parties as manifested by the language used, if such intentions can be discovered therefrom. The word “refund,” as here used, is defined by Bouvier’s Law Dictionary, vol. 2, p. 859, as follows:
“To pay back by the party who has received it, to the party who has paid it, money which ought not to have been paid.”
Webster’s Universal Dictionary, published in 1912, gives several definitions, viz:
(a) “To pour back (obs).”
(b) “To repay.”
(e) “To return in payment or compensation for what has.been taken. To restore.”
(d) “To reimburse (obs).”
*114 In attempting to arrive at what was in the minds of . the contracting parties at the time of the execution of the contract, it might be well to briefly state the situation. Appellee was a domestic corporation operating in Larimer county. It was engaged in constructing reservoirs, building ditches, and supplying water to consumers. At the time this contract was made it was either building or about to build an irrigating ditch in the neighborhood of Fort Collins, and it seems had been contemplating the purchase of a steam shovel to be used in excavating the ditch. Appellants, learning of this, submitted to them the offer of August 28th, therein proposing to sell to them the shovel upon the terms and conditions [¡herein expressed. Afterwards it appears that appellee considered this offer favorably, and some time between that date and September 3rd decided to purchase the shovel in pursuance of the offer. On the last mentioned day the contract was consummated and the guarantee made concerning the condition of the shovel, etc. It was well known to both parties that the shovel was in the state of Washington, and it can be fairly presumed from the record that all parties knew the shovel was to be brought to Fort Collins and used on a ditch in that vicinity. Appellants vigorously contend that the contract clearly shows on its face that, in case of a breach of warranty as to the condition of the shovel, their liability was terminated by re-’ payment to appellee of the four thousand dollars paid on the purchase price, with interest; while appellee claims that the phrase “will refund all money paid by you on demand” clearly meant all moneys paid out by it, either on the purchase price or for freight, installation or other expenses that occurred in attempting to demonstrate its efficiency for the work required under the warranty. Inasmuch as the sellers of this shovel were not manufac-' turers or dealers in such implements as a regular business, but were merely buying and selling this particular *115 shovel for the profit that might arise in a re-sale of the same, such facts being known to appellee; and inasmuch as neither party had ever seen the shovel and had no personal knowledge of its conditions appellants relying entirely upon statements from the railroad company and some individual in Washington as to the same; we cannot believe it was in the minds, or in contemplation, of the parties, that if the shovel failed to conform to the terms of warranty, appellants were liable for any amount beyond the money paid on the purchase price; nor does it appear to be a reasonable presumption that appellants intended in this transaction to assume a liability so great as that entailed upon them by this verdict. It appears rather from its reading that in making this contract appellants intended to limit their liability to a refund of the purchase price in case the shovel did not prove as represented, and had no intention of assuming the liability that would result from an action upon breach of a general warranty.
There is another matter appearing of record which is rather significant upon the question of the intentions of the parties who made this contract and how they understood it, and that is the letter written by appellee to appellants under date of December 14, 1906, which was after the shovel had been in operation on the ditch for several weeks. This letter appears to be the first positive complaint of appellee concerning the shovel. It definitely repudiates the sale, pronounces the shovel worthless, as in no way conforming to the terms of the warranty, refuses to accept the same, notifies them that the shovel is at their disposal and subject to their order, and closes with the following sentence:
“We also beg to notify you that this company, pursuant to the terms of your guarantee, hereby demands that you immediately refund to this company the amount paid to you on account, to wit, the sum of Four Thousand *116 Dollars ($4,000.00), and we shall be pleased to receive your remittance therefor at once. ’ ’
It is a fair interpretation of this letter that appellee at that late date considered the liability of appellants to be only the four thousand dollars demanded. It seems that if it had placed the construction upon the contract that it did in its subsequent suit and at the trial, it would have at least intimated in this letter that it had additional claims for damages against appellants.
It is not altogether clear from the evidence but that the expenditure of a hundred dollars in repairs would have placed the shovel in good, serviceable, working order, to do efficient work within its capacity. However, the jury thought otherwise, as their verdict indicates. The warranty did not go to the amount of work the machine would do, or the size of the ditch in which it could be successfully used. All the evidence strongly tends to show that it was attempted to have the shovel dig a ditch of a size i entirely beyond its capacity.
There appears to be considerable authority relative to the situation disclosed by this record. Prom vol. 30, p. 173, A. & E. Enc. of Law, we extract the following:
. “The most salutary rules for the construction of contracts of warranty are, that the court shall put itself in the place of the contracting parties and then, in view of all the facts and circumstances surrounding them at the time of the making of the contract, consider what they intended by its terms; and that when the intention is manifest it shall control in the interpretation of the agreement, regardless of inapt expressions and technical rules of construction.”
This rule is particularly applicable to this case. There can be no question but that this action is founded upon breach of a special warranty in the sale and purchase of this shovel, and, had there been no attempt to *117 limit the liability of the seller in case the shovel did not comply with the warranty, the nsnal rules measuring the damage in such case would be applicable. Such damage would probably include freight, labor, and moneys paid out in repairs, installation, and fair effort to have it perform the services for which it was intended.
The attorneys in their briefs discuss at some length the question of measure of damage in cases of rescission of contract and those upon breach of warranty. This distinction is well recognized by all the authorities, and each of such actions has a standard of its own for the measuring of damages. It is a well settled rule of law that the purchaser cannot maintain an action to rescind a contract for the sale of personal property, and at the same time an action for breach of general warranty. In the latter case such action confirms the sale, and the seller retaining the property purchased relies upon his damage caused by failure of the article to comply with the representations, the measure of damage in such case, as approved by our' own supreme court and the great weight of authority, being the difference between the actual value of the article and its value in case it had been as warranted; while in the former the measure of damage upon rescission is recovery of money paid, plus all damage sustained by reason of the failure of the article to comply with the representations. We think this contract by its terms implied that in case of failure of the shovel to comply with the representations the same would be returned to the seller and the purchaser should have refunded to it the purchase money. The case of The Canon City Electric Light & Power Co. v. The Medart Patent Pulley Co., 11 Colo. App., 300, has become somewhat of a leading case in this state upon the measure of damage respecting the rights of parties under a sale of personal property by special warranty. That was a case wherein' the plaintiff sued the defendants to recover the purchase price of certain arti *118 cles of machinery, the sale being made under a special warranty reading as follows:
“If any goods we may furnish do not come up to our representations we will replace them free of charge or refund the money paid for them. ’ ’
The articles were sold f. o. b. St. Louis, Mo., and shipped to Canon City, Colo. Defense was made that the articles purchased, and particularly clutch pulleys which were warranted to be true running, well balanced, and to operate satisfactorily, did not in any way comply with the warranty respecting the same and became valueless to defendant. Three months after the purchase defendant notified plaintiff that the machinery purchased was defective and would not operate satisfactorily, and requested plaintiff to take proper steps to remedy the defects or replace the same, but plaintiff neglected so to do. Defendant also alleged that it paid out in freight from St. Louis to Canon City the sum of $77.25, and that in testing the fitness of the machinery for the purpose for which it was purchased defendant expended work; labor and money, including freight charges, to the amount of. $182.35. This defense was in the nature of a counterclaim. At the trial defendant attempted to show by evidence the amount of money spent for extra fuel in operating the machinery, damages to its other machinery, expense of placing the machinery and attempting to operate it, also freight paid by it from St. Louis to Canon City, all of which the trial court rejected. The court of appeals sustained this ruling and held that the only measure of damage which defendant could claim was the difference between the value of the goods in possession of defendant and the agreed purchase price, allowing neither freight nor any other kind of consequential damages to be recovered. In many respects the facts in this case are quite similar to those in the case at bar. Judge Thomson, *119 in rendering the opinion of the court, used the following language:
“The rules for interpreting express warranties do not differ from those applied to other contracts. The object to be attained is an ascertainment of the intention of the parties from the language which they have employed. We find here that the plaintiff agreed that its machinery should possess certain characteristics, and be capable of working in a certain manner; but we also find an express limitation upon its liability, in case the machinery should fail to answer the representations. The defendant purchased the articles upon this written statement, it exacted no other, and except for it the rule caveat emptor would be applicable. It therefore has no remedy outside of the agreement of warranty, and as the plaintiff’s liability upon the warranty is defined and limited by the terms of the contract, it can be held to no greater liability. * * *
“But the defendant, equally with the plaintiff, is bound by the terms of the contract of warranty, because it was the contract in pursuance of which it purchased the goods, and as that contract fixed the limits of the, plaintiff’s liability, there can be no recovery against it, excepting within those limits. The defendant is therefore entitled to nothing on account of special or consequential expense, or loss, or damage, resulting from its attempted use of the machinery. * * *
‘ ‘ The defendant further offered to prove the amount paid by it for freight and cartage on the goods from St. Louis to Canon City, but the court refused to admit the evidence. It appears that the goods were sold in>St. Louis, and were delivered to the defendant on board the .cars in St. Louis, and that the agreed purchase money was the price at St. Louis. To find whether the plaintiff was chargeable with the cost of transportation of the goods from St. Louis, we must look to the contract under *120 which they were purchased. The plaintiff agreed in ease they should not come up to its representations, if it did not replace them, to refund the money paid for them. As the goods were delivered at St. Louis, and the money to be paid for them was the price at St. Louis, the money paid to the carriers was not money paid for the goods, and was therefore not money which the plaintiff agreed to refund to the defendant. We think this evidence was properly rejected,” etc.
In Sycamore Marsh Harvester Mfg. Co. v. Sturm, 13 Neb., 210, a reaper was sold under the following’ warranty :
“We warrant Wheeler No. 6, combined reaper and mower, bought of us, to be a good grain cutting’ machine and a good mowing machine. Should the machine fail to do as warranted, then and in that case we are to be notified and given time to make the machine work. Should we fail to make the machine work, then we agree to take it back.”
Upon suit being brought upon the note, defendants attempted to recoup fifty dollars ($50.00) for loss of time and services of a team, one hundred and eight dollars ($108.00) for loss of grain in harvesting, and thirty-five dollars ($35.00) for extra help and hire' of another harvester. The court says:
“The written warranty having been received in evidence, and being held to be the contract of the plaintiff, its terms, fairly construed, become the law of the case. * & #
“The terms of the written warranty limited the liability of the plaintiff to taking back the machine, and of course restoring any part of the purchase price which had been paid.”
Roswell v. Oleson, 32 Minn., 288, was an action based upon a special warranty in the sale of a separator. After warranting the machine to be well finished, well painted, *121 durable with proper care, and to do as good work in threshing and cleaning grain as any other machine in the world, the warranty.continues:
“If said machine will not bear the above warranty, it is to be returned after a trial of two weeks to the place of delivery, and another substituted that will answer such warranty, or the money and notes immediately refunded.”
The court says:
“That the parties to such a warranty may agree on a remedy for a breach, and make it exclusive, is not to be doubted. They did so in this warranty. * * * The language of this does not give the purchaser any option.”
To- the same effect, Street v. Chapman, 29 Ind., 142. This case was also founded upon a breach of special warranty, in the sale of a steam engine. The court says:
“The contract is, that if the engine fails to nin four pairs of burr stones, the appellant will.remove it and pay the appellee one thousand dollars. The removal of the engine and the payment of the money is the limit of the liability for the failure of the engine. The neglect of appellant to comply with his agreement and remove the engine, or pay the money stipulated, did not remit the appellee to his action for a breach of the warranty, but simply authorized a recovery for the expense incurred in making such removal, and a judgment for the money contracted to be paid. ’ ’
In the case at bar appellants further contend that delivery of the shovel took place when it;was placed on the cars at Tacoma, and that such delivery was equivalent to an acceptance by appellee. We cannot agree with counsel. We think it is a Well recognized rule that, in contracts of this character where the warranty goes to the successful operation of a machine sold, a reasonable time shall be given to the purchaser in which he may test the machine in putting it to the use for which it was pur *122 chased, and if, upon such test, it fails to conform to the warranty and representations made by the seller, the purchaser is in apt time if he then notifies the seller of such failure.
“The purchaser is entitled to a reasonable time within which to test the articles purchased for defects and to return them if not as warranted.” 35 Cyc., 439.
Many authorities are cited in support of this proposition.
For the reasons above expressed, instruction numbered eight, given by the court, was error and would necessitate a reversal of the judgment unless the excess be remitted; the instruction being to the effect that’ if the jury found the issues in favor of plaintiff it could,' in determining the damages, take into consideration not only the cash paid on the purchase price by plaintiff, but also the freight paid on the shovel by it from Tacoma to Fort Collins, also the amount reasonably and necessarily expended by it in installing the machine upon its works in endeavoring to operate it. The court also erred in refusing to give instruction numbered seventeen, tendered by • defendant. This instruction was to the effect that if the jury found for plaintiff it would be limited in recovery to the sum of four thousand dollars, with interest from September 3, 1906, and no more. As to whether or not interest was recoverable, .or the latter instruction correctly stated the law concerning interest as applicable to the facts in this case, it will be unnecessary to decide, for the reason that appellants therein assumed the position that if the jury found for plaintiff it was entitled to such interest, and took such position in their brief. Having taken that stand we have no disposition to take issue with them on that question.
In view of the conclusions reached, the judgment will be affirmed to the amount of four thousand dollars, with legal interest from September 3, 1906, to time of its re *123 payment, and costs, providing appellee consents to remit the excess; otherwise the judgment will stand reversed and the case be remanded for new trial.
Decided November 11, A. D. 1912.
Rehearing denied December 19, A. D. 1912.

Judgment Affirmed on Condition.