### E. F. ELMBERG CO. v. DUNLAP HARDWARE CO.   (No. 1787.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 16, 1921.)

1. **Appeal and error ⬡758(3)—Assignments of error complaining of finding that attorney was defendant's attorney held not properly briefed.**

Assignments of error, complaining of the overruling of a motion for a new trial on the ground that the court improperly found that an attorney appearing and asking that the case be reset for a further day because of the absence of another attorney was defendant's attorney, was not properly briefed and presented, where it consisted simply of the sworn statement of the attorneys setting up facts as they conceived them in contradiction of the recitals of the judgment, and did not purport to point out the particular error committed or wherein the rendition of the judgment was error.

2. **Sales ⬡62—Contract of sale held not entire but several when price of each machine determinable.**

A contract, whereby defendant appointed plaintiff its exclusive agent for the sale of certain machines, and sold plaintiff a specified number of the machines at a specified price for each machine and agreed to fill all carload orders, was not entire but several; the amount paid for each machine being determinable.

3. **Sales ⬡442(16)—Plaintiff not entitled to recover price paid under warranty where machines not worthless.**

In an action for breach of warranty of belt attachments for running machinery by automobile power, plaintiff was not entitled to judgment for the price paid while still retaining the attachments, though it claimed that they were absolutely worthless to it, where it appeared that they would be of value to any one having machinery that could be driven thereby.

4. **Sales ⬡425—Remedy after title has passed is on warranty for difference in value.**

Where title has passed and a warranty goes to the quality or degree of fitness and there is no fraud or agreement to return, rescission cannot be had, but the action is on the warranty for the difference in value of the thing as delivered and as it should be delivered, with such special damages as may be shown.

5. **Sales ⬡442(2)—Price paid not recoverable on warranty.**

Under a general warranty or implied warranty of machinery, the buyer cannot recover the price paid, but only the difference between the value as delivered and as it should be delivered.

6. **Sales ⬡442(16)—Buyer retaining goods cannot recover price unless goods worthless.**

A buyer cannot affirm the contract by keeping the machine purchased and recover the price paid, unless it alleges and proves that the machine was worthless.

7. **Sales ⬡441(4)—No recovery on warranty where evidence does not show difference in value.**

In an action for breach of warranty of machinery, the evidence was insufficient upon which to predicate a judgment, where it did not show the difference between the value of the machines delivered and those called for by the warranty.

8. **Sales ⬡267—Express warranty excludes implied warranty.**

An express warranty ordinarily excludes an implied warranty, since the seller has a right to define his liability and provide for the measure of damages or the manner of fulfilling the warranty.

9. **Sales ⬡279—Under warranty buyer not entitled to recover for machines not sold or profits on resale.**

Under a contract of sale of machines to a dealer for resale, providing that the seller agreed to refund the purchase price in full

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(234 S.W.)

for any defective machine sold in the dealer's territory, the dealer could not recover for breach of warranty on account of machines which had not been sold by it, nor could it recover the profits on machines sold by it.

Appeal from District Court, Deaf Smith County; Reese Tatum, Judge.

Action by the Dunlap Hardware Company against the E. F. Elmberg Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

W. H. Russell, of Hereford, and J. V. Gregory, of Parkersburg, Iowa, for appellant. Wm. M. Knight and Carl Gilliland, both of Hereford, for appellee.

HUFF, C. J. This action was brought by the Dunlap Hardware Company, appellee, against the Elmberg Company, appellant, for damages on an express breach of warranty of machinery manufactured by appellant, known as "Elmo feed grinders" and "Elmo belt attachments," for automobiles. It is alleged that appellee entered into a written contract with appellant, by the terms of which appellant agreed to sell to appellee such machines as appellee might order at and for the price of $18.50 each, f. o. b. Parkersburg, Iowa. The contract was attached to the petition as an exhibit. It is alleged:

"That by the terms of said written agreement defendant guaranteed every machine should come up to and fulfill every claim made for it in the advertising matter used by it and agreed to refund in full the purchase price of any machine sold in the territory above described that failed to come up to said guaranty. That the advertising matter prepared and used by defendants stated that said machines would grind corn and oats, coarse or fine, and would grind wheat into graham flour."

That at the time of entering into the contract an agent of appellant and a representative of appellee canvassed a part of the territory awarded in the contract, making demonstration with a sample machine to contemplating purchasers, with kaffir corn, maize, feterita, and other grains produced in the locality. Appellant's representative then and there represented the machine would grind kaffir corn, maize, feterita, and other grains produced in the locality and knew such were the principal grains grown in the territory and very little wheat and less corn and oats. That the representations that the machine would grind such grains induced appellee to enter into the contract and but for which it would not have purchased any of the machines. That appellee purchased 500 of the feed grinders and 500 of the belt attachments and paid therefor $18.50 for each machine and in addition paid the freight on the machines so purchased from Parkersburg, Iowa, to Hereford, Tex., $844.60.

"That said machines were bought by the plaintiff from the defendant under the guaranty and representations above mentioned, as well as under the implied agreement that they were suitable for the purpose for which they were made and sold and that they would do the work for which they were designed in a good, proper and efficient manner." On receipt of 500 grinders upon examination it was found about 250 of them "were so poorly and badly constructed that they permitted the grain to leak out through an opening in the joints of the casting which should have been so constructed that they would have fitted together tightly and closely so that no grain could escape; but that instead of the different pieces of casting going together properly and fitting up closely and tightly, a large opening was left, through which the grain could and did pour out onto the ground before reaching the grinding burrs." About 250, or 50 per cent., of the grinders were so defective and poorly constructed that, when putting them together, "if the bolts on one side of the machine were tightened up so as to pull the machine together in a proper way, and as it was designed to be set up, the burrs could not be drawn together so as to grind the grain, in consequence of which the grain could and did pass through the burrs without being ground." If the machine had been properly constructed, when the bolts on both sides were drawn up, the burrs would have fitted together closely and have ground the grain.

"Plaintiff further avers that the belt attachments furnished by it from the defendant were purchased for the express and sole purpose of being used to drive the grinders, and that about 250 of them, by reason of the fact that the grinders are defective and will not work properly, are absolutely worthless and of no value for any purpose to the plaintiff. That the belt attachments are of no use and are absolutely worthless unless they can be used for the purpose of driving the feed grinders." That it was understood between the parties that appellee should sell the machines for $27.50 each, or a profit of $8.50 each, which was a reasonable and fair profit. That appellee is entitled to recover a sum of $18.50 for each defective grinder, $18.50 for each belt attachment, and the sum of $8.50, profits on each machine. It prays for judgment for its damages in the sum of $12,000. The petition also alleges that both parties were and are private corporations, appellee's principal office and place of business being at Hereford, Tex., and appellant's Parkersburg, Butler county, Iowa. The appellant was served by nonresident notice on the 6th of September, 1920. Upon the filing of the suit August 24, 1920, appellee sued out a writ of attachment and seized 500 crates of machines in the cars on the railway track at Hereford, Tex., on the same day.

There was no answer filed by the appellant in the court below.

Judgment was rendered for appellee for $12,000, foreclosing the attachment lien on the property seized under the writ. The judgment in effect recites that the case was called on appearance day for orders, and that the parties, by attorneys, agreed in open court that the case could be set for trial on November 17, 1920, which was done. That the case was called on the 17th of November, and that plaintiff's counsel announced that Mr. Russell, attorney for the defendant, was then sick and the case was postponed until the 18th. On that day, when regularly called for trial, Mr. Russell, the attorney for the defendant, appeared and asked in open court to reset the case for a future day in the term, but declined to file an answer and stated in open court that he did not know whether he would file any answer for defendant as Mr. Gregory, defendant's attorney, lived in Parkersburg, Iowa, and was not present, and that he did not know what the reason was for his absence, and that he, himself, did not know what course of defense to present in the way of an answer. The plaintiff then announced ready for trial and asked the court to hear and try the case, which request the court granted and, upon testimony adduced at that time, rendered judgment as above stated.

[1] The first and second assignments of error relate to the action of the trial court in overruling the motion of appellant for new trial, on the ground that he found that Mr. Russell was the attorney of the appellant in the trial court. This assignment is simply the sworn statement of the attorneys, Russell and Gregory, setting up the facts as they conceived them in contradiction of the recitation in the judgment. The assignments do not purport to point out the particular error committed by the trial court or wherein the court was in error in rendering the judgment. The assignments cannot be considered because improperly briefed and presented in this court.

The second assignment asserts the judgment of the trial court should be set aside because the petition upon which it was rendered was subject to a general demurrer and does not state a cause of action. We have concluded to consider this assignment hereafter under subsequent assignments.

The third, fourth, and fifth assignments we have concluded to overrule without discussing at this time.

We have concluded this case should be reversed as the judgment is not supported by the pleadings and the evidence. The assignments are not as definite as they should be, but in considering the motion for new trial as a whole, wherein it assails the petition as being insufficient, and the contract upon which the action is based and the testimony adduced upon the trial, we think all together are sufficient to challenge the judgment for $12,000 as being unjust and not supported by the facts.

The contract upon which the action is based stipulates that appellant appoints appellee exclusive agent and guarantees to it the exclusive right to sell the manufactured products of appellant in all the counties included in the northwest portion of Texas, defining the territory, the entire states of New Mexico and Oklahoma. Upon its execution appellee purchased 250 Elmo feed grinders and 250 Elmo belt attachments for automobiles, a total of 500 machines, at $18.50 each; the aggregate sum paid being $9,250, f. o. b. Parkersburg, Iowa. It is agreed appellant would thereafter fill all carload orders made by appellee. The fifth clause reads:

"The party of the first part (appellant) guarantees that every machine will come up to and fulfill every claim made for it in the advertising matter used by first party and hereby promises to refund in full the purchase price for any machine sold by the second party in the territory above described that fails to come up to said guaranty. The first party also agrees to replace any defective part in said machine due to defective workmanship, without charge to the party of the second part, provided the transportation charges on said defective parts shall be paid to the factory at Parkersburg, Iowa."

The evidence shows there were two carloads of machines shipped, making 500 grinders and 500 belt attachments. Of these, as we understand, only part of the grinders were defective. The witness on the stand described the defects substantially as alleged. A third car was shipped but not delivered, having been consigned to appellant at Hereford. It was this car which was attached. The evidence is very indefinite, but as we gather, appellee had sold 264 machines; that is, as we understand, complete, grinder and belt attachments. There seems to have been no fault or complaint as to the belt attachments. Out of the 264 sold something like 30 are defective, as testified to. Appellee has on hand 236 which have not been sold. The witness at one place states they opened about one dozen crates (each machine was crated separately) and found one machine out of every five that could be used; about one-fifth unsalable, and four-fifths defective. He states that Mr. Elmberg, president of the company, was present at the examination of the machines and admitted that the machines were defective and promised to send a man down and help correct them, either by taking up the machines or working them over to the satisfaction of purchasers. We quote Mr. Dunlap's testimony, as representing the evidence on damages sustained:

"We were selling these machines to other dealers. We paid the freight, which I think

was $426 on the car, which was a little less than one dollar for each machine; that is, about $1 on the belt attachment and $1 on the grinder. There are 500 machines in the car, and the freight was $426.00. By a complete machine I mean grinder and belt attachment. We would furnish expense money to our salesmen and pay them $8 on each machine sold. We have taken back 20 or 30 machines that had been shipped out. There are some other machines that are still out that are defective. We have inspected the last machines that we shipped out and have worked over such machines as we could work over. I think we have shipped out something like 260 complete machines. We have 236 machines on hand and the whole lot are defective. There are only about 26 out of the 236 that can be worked over. Of these machines that we have sold we have taken up some, and there are others that we know we are going to have to take up. Of the 236 machines we have on hand, there were included 100 that we have sold and have not delivered on account of their being defective. We did contract them, but could not deliver them. We have sold and delivered 264 machines. I don't know just how many of them are defective, for we have not worked over the entire territory. There are something like 30 defective machines that I know of out of the 264; but we have examined every machine we have put out since the trouble came up. Out of the 264 now on hand and that have been sold and delivered, we know of something like 30 that are defective. We have no complaint about the rest of them, for Mr. Gregg went over the territory and helped the dealers to work the machines over. The machines we now have on hand are the culls from practically all the machines we have received. Some of them are machines that have been returned to us. Out of the 236 we sold 100 to Weatherford, and they were turned down on account of being defective. We actually delivered 30 machines, and they were returned on account of their defect. All of them are defective. Out of the 264 that are now out, something like 30 are defective. I could not say about the balance of them, for there are places out on the territory where they have not yet tried to do any work with the machine. There are a lot of machines at Dimmitt and a lot at Wildorado that have not been opened up and there are some in Oklahoma that have not been heard of. The examination made of the machines when Mr. Elmberg was here disclosed that there were about 4 defective machines to 1 that was all right. We have worked over quite a number of these machines and there would not be 4 defective machines to 1 good one out on the territory. We have worked over all that could be worked over at our own expense. It would cost anywhere from $3 to $5 on each machine. Out of the 264 machines still out on the territory, about 30 of them we know were defective. Part of the places have not been worked over by us, but I don't now how many. All those that have been worked over have been on Mr. Gregg's territory, and I guess he knows the number. He has worked over some of the machines that have gone on his territory when he would be in."

The evidence indicates the grinder is a separate machine from the belt attachment. The attachment is to be attached to a Ford car. It is advertised as "Elmco" Ford belt attachment, and by means of running the Ford engine power is obtained by attachment with the pulley and belt to run the grinder. It is stated in the advertisement:

"Convert your Ford engine power into gas engine power. 'Elmco' Ford belt attachment attaches in fifteen seconds' time to your car without use of bolts, screws or cumbersome jack; does not change appearance of your car nor interfere with it for touring: saves you the cost of gas engine outfit; cuts your wood—shells your corn—runs your washer—cut your ensilage—run your churn—operate your grain elevator—do all of your gas engine work on your farm with your Ford. Elmco-Ford belt attachment enables your Ford to do all the work of any 8 H. P. engine without straining or injuring it. Gives you gas engine power anywhere your Ford will go. More portable than any gas engine and runs with Ford economy. Make your Ford your power plant as well as your passenger car. Equipped with standard size pulley 4x8 inches; price of attachment alone $45.00."

The witness testified:

"You cannot use a grinder without a belt attachment, but you might use the belt attachment without the grinder for pumping water or some service of that sort."

[2, 3] It will be seen from the testimony that only 236 machines were defective—not absolutely worthless and that the belt attachments were only defective in that the grinders were defective. As held by this court, through Judge Boyce, the contract was not entire for the several machines, but several; the amount paid for each machine could be determined. Associated Mfg. Co. v. Jordan, 223 S. W. 1050. The allegation of the petition in this case shows the belt attachments were worthless to appellee. That they may have been, but nevertheless valuable to any one who had a grinder without defect, a corn sheller, or water to pump, or milk to churn. The petition does allege the belt attachments are of no use and absolutely worthless unless used for the purpose of driving feed grinders. The witness testified it could be used for pumping water and service of that nature. Manifestly, the appellee was not entitled to judgment for the price paid for 250 belt attachments at $18.50 each, as rendered in this case, and also permitted to retain the machines.

[4-8] The petition in one allegation apparently relies upon an implied or general warranty. Where the title has passed and the warranty goes to the quality or degree, of fitness and there is no fraud or agreement to return, rescission cannot be had, but the action is on the warranty for the difference in value of the thing as delivered and as it

should have been delivered, with such special damages as may be alleged and proven. Wright v. Davenport, 44 Tex. 164; Stark v. Alford, 49 Tex. 275; Ellis v. Tips, 16 Tex. Civ. App. 82, 40 S. W. 525; Jesse French, etc., v. Thomas, 36 Tex. Civ. App. 78, 80 S. W. 1063; Harrell v. McDuffie, 61 Tex. Civ. App. 30, 128 S. W. 1149; Texas Kalamazoo Silo Co. v. Alley, 180 S. W. 621; Potter v. Mobley, 194 S. W. 205; Ulrich v. Galveston, 199 S. W. 310; Liquid Carbonic Co. v. Migurski, 229 S. W. 661. If appellee relies upon general warranty or an implied warranty, it cannot recover the price paid, but can only recover the difference between the value as delivered and as it should have been delivered. It cannot affirm a contract by keeping the machine and recovering the price paid unless it allege and prove that the articles are worthless. This is not done either by pleading or proof. There was no evidence upon which the court could have predicated a judgment allowing damages, because there was no proof tending to show the difference between the value of the machines delivered and that called for by the warranty. Ulrich Case, supra, 199 S. W. 311(5). This action, however, we regard as being upon a special warranty in writing. An express warranty ordinarily excludes an implied warranty. Case Threshing Machine Co. v. Hall, 32 Tex. Civ. App. 214, 73 S. W. 835. In the sale of personal property, as in all other transactions, the seller has a right to define his liability by special warranty and provide for the measure of damages or the manner of fulfilling his warranty. Oltmanns v. Poland, 142 S. W. 653; Shearer v. Gaar-Scott Co., 41 Tex. Civ. App. 39, 90 S. W. 684; Fetzer v. Haralson, 147 S. W. 290; Haynes v. Plano Mfg. Co., 36 Tex. Civ. App. 567, 82 S. W. 532; McGill v. Hall, 26 S. W. 132; Southwestern Portland Cement v. Harrod Co., 155 S. W. 656; Caples v. Port Huron Engine, etc., 61 Tex. Civ. App. 646, 131 S. W. 303; Simmons v. Ruggles, 176 S. W. 152.

[9] It is alleged that appellant "agreed to refund in full the purchase price for any machine sold in the territory." The contract offered in evidence is that appellant "hereby promises to refund in full the purchase price for any machine sold by the second party (appellee) in the territory." It is manifest, we think, under the pleadings and under the express warranty, proven and relied upon, appellee must have "sold" in the territory machinery which did not come up to the fulfillment of appellant's claim for it before it could recover the price paid appellant for it. The testimony is that only 30 of the grinders sold were defective. The court permitted a recovery for 236 machines which had not been sold. These machines did not come under the special warranty declared upon or proven. The special warranty did not authorize a recovery for the profits, which are, we think, excluded by the terms of the express warranty. We hardly think the stipulation that appellant would replace defective parts limits the warranty, but this would appear to be a cumulative right to the general warranty. It would seem that by the terms of this express warranty it implies that in case of failure of any machine sold in the territory by appellee to fulfill the advertised claim for it, it should be returned to appellant and the appellee should have refunded to it the purchase price. This is the interpretation placed upon a similar provision in an express warranty, in the case of Shaw v. Water Supply, etc., 23 Colo. App. 110, 128 Pac. 480. In that case, under such a warranty, it was held that freight paid could not be recovered where the contract fixed the price f. o. b. cars at place of shipment, as in this case. The price in this case was at Parkersburg, Iowa. The money paid the carrier was not the money paid for the machine. We do not undertake to say at this time that under the contract between the parties hereto appellee could not recover under a general warranty or that the warranty declared on was only cumulative and special as to machines sold in the territory; or whether the furnishing of the machines that would answer the advertisement was a condition to a contract, the breach of which would give a right of recovery. On these questions we find the authorities are not in harmony, and much difficulty may be found in determining just what remedy a dealer has under circumstances such as are here disclosed in this case. As bearing on this question, we cite Detroit Automatic Scales v. Smith Milling Co., 217 S. W. 198. We call attention to the frequently cited case on the questions involved in this case, Jones v. George, 61 Tex. 345, 48 Am. Rep. 280, and also Detwiler v. Downes, 119 Minn. 44, 137 N. W. 422, 50 L. R. A. (N. S.) 753, and Louisville & N. Ry. Co. v. Miller, 156 Ky. 677, 162 S. W. 73, 50 L. R. A. (N. S.) 819, and notes to each case, for a discussion as to the holdings of the various courts. We certainly think the appellee cannot recover the purchase money and also keep the machine, under the contract alleged and declared upon. It must either rescind or recover the difference or must show that the machines on hand are worthless. Webb v. Emerson, 227 S. W. 499.

Under the petition and the evidence, we have decided that the judgment is not supported by the evidence for the amount rendered, and the judgment will therefore be reversed and remanded.