## ROBERTS v. ROBERTS et al.
### No. 3395.

Court of Civil Appeals of Texas. Amarillo.
April 16, 1930.

C. D. Wright, of Silverton, and Morgan, Morgan & Britain, of Amarillo, for appellant.

O. R. Tipps, of Silverton, and Trulove & Frazee, of Amarillo, for appellees.

**JACKSON, J.**

This suit was instituted in the district court of Briscoe county, Tex., by the plaintiffs, R. L. Roberts, M. C. Roberts, and R. F. Pruitt, composing the firm of Roberts Grain & Seed Company, against A. F. Roberts, doing business under the trade-name of A. F. Roberts Construction Company.

The plaintiffs alleged that about May 21, 1928, they made an oral agreement with the defendant, by the terms of which he agreed to furnish the plans and specifications and the labor and material, and erect for the plaintiffs a grain elevator at Morse, Texas, for the sum of $7,300. That, under the terms of the agreement, the elevator was to be of sufficient size and erected so as to load out dry grain into cars to capacity without the aid or necessity of scooping the grain by hand.

That immediately after the oral agreement, the defendant prepared plans and specifications and a written contract, which were supposed to embody the terms and conditions of the oral agreement; that the defendant promptly presented written plans and specifications and also the written contract, to be executed by the parties; that plaintiffs, acting through M. C. Roberts, asked the defendant whether or not an elevator, constructed according to such plans and specifications and with the dimensions provided for, would load out dry grain into cars to capacity without scooping the grain by hand, and the defendant represented to plaintiffs that the elevator erected according to such plans and specifications and of the dimensions provided for, would, when completed, load out dry grain into cars to capacity without handling any of the grain with scoops. That the plaintiffs were without experience or knowledge, concerning plans and specifications, and did not know whether an elevator, constructed according to such plans and specifications, and the provisions of the written contract, would load grain into cars to capacity without using scoops, and therefore, believed and relied upon the representations and statements of the defendant, and signed the contract.

That the elevator constructed by the defendant at Morse, Tex., does not load dry grain into cars to capacity without the use of scoops. But in order to operate said elevator and load grain in cars to capacity, plaintiffs are put to the necessity of hiring labor for scooping grain by hand.

That the defendant made these representations, which were false and fraudulent, before the written contract was executed, for the purpose of inducing, and which did induce the plaintiffs to sign the written contract for the erection of said elevator. That but for such false and fraudulent representations and statements, plaintiffs would not

have executed the contract. That such statements and representations were material, because the elevator, as constructed, is of much less value than it would have been if it would load dry grain into cars to capacity without the cost necessitated by the use of scoops, and plaintiffs are not bound by the written contract, for the reason that they were induced to sign, and did sign, such contract, by the false and fraudulent representations of the defendant.

That at all times it was agreed that the elevator should be constructed in a workmanlike manner, and, when finished, should be delivered in first-class running order and would be a complete and modern elevator plant.

That prior to the execution of said contract and before the construction of said elevator began, plaintiffs and defendant were negotiating relative to the erection of another grain elevator at Silverton, in Briscoe county, Tex., according to the same plans and specifications. That such negotiations resulted in a contract for the defendant to build for plaintiffs the elevator at Silverton, and this contract was given as a part of the consideration for the guarantee by defendant that the elevator at Morse, Tex., would load dry grain into cars to capacity without scooping by hand. That the plaintiffs relied upon such guarantee in closing the contract for the elevator at Silverton, and they would not have given the defendant the contract for the Silverton elevator, but for such guarantee.

Plaintiffs alleged that they have paid the entire consideration to the defendant for the erection and construction of the grain elevator at Morse, Tex. That, at the time such payment was made, they did not know that the elevator would not load grain into cars to capacity, and at the time of such payment the defendant again stated and represented that the elevator would, as contracted for, load grain into cars to capacity without the use of scoops, and if it did not, defendant would remedy it.

Plaintiffs alleged that the defendant wholly failed to erect said elevator so that it would load out grain into cars to capacity without the aid of scoops, and, by reason thereof, plaintiffs will be compelled to continuously employ an extra hand to assist in loading cars to their capacity, to plaintiffs' damage in the sum of $2,500.

That it was agreed that the elevator, when completed would have a grain-handling capacity of 1,500 bushels per hour, but, as constructed, its capacity is only 1,000 bushels per hour, because it is equipped with grain buckets differing from those provided for in the plans and specifications, and that it will cost $250 to replace the small buckets with buckets of greater capacity.

That the concrete foundation under the scales was insufficient, to remedy which it will cost $50. That the concrete walls of the dump pit are of inferior material; have crumbled and fallen apart, and to replace such walls will require an expenditure of $100.

That the grain elevator at Morse, Tex., if completed in accordance with the agreement, would have been of the value of $7,300, but, as constructed and completed, its value does not exceed $4,400, and by reason of the incapacity to load cars to their capacity without the use of scoops, and the defects as alleged, plaintiffs have suffered damages in the sum of $2,900.

The defendant answered by a general demurrer, numerous special exceptions, general denial, admitted that he entered into a written contract with plaintiffs to build the elevator at Morse, Tex., in accordance with certain plans and specifications, which were accepted and approved by the plaintiffs, but denied that he guaranteed the elevator to load grain to capacity of cars or that such elevator would be a complete, modern elevator. That if the elevator does not load grain into cars to capacity without the aid of scoops, it was not the fault of defendant, but the fault of the plaintiffs, who insisted on their own ideas for the construction of the elevator and would not permit the defendant to construct said elevator according to his desire. That the plaintiffs did not rely on the defendant, but insisted on dictating their plans and specifications and consulted and advised with some party unknown to the defendant, and demanded certain changes in the plans and specifications and the size of the spout and the height of the elevator. That he carried out the contract and built the elevator according to the plans and specifications. That the material and work was inspected by the plaintiffs, as the work progressed, and the grain elevator, when completed, was accepted and paid for in full by the plaintiffs. That about the 2d of December, 1928, the plaintiffs loaded carloads of grain from said elevator and that no claim was made to the defendant, that the elevator failed to load cars to full capacity, until about the 28th of February, 1929; by all of which actions and conduct the plaintiffs are estopped from claiming any defects in the work or material, from denying the acceptance of the elevator, or setting up any claim that the defendant failed to comply with his contract.

In response to special issues submitted by the court, the jury found, in effect, that the defendant guaranteed that the elevator at Morse, Tex., would load dry grain into cars to capacity without scooping by hand; that the contract for the Silverton elevator was given to the defendant partly in consideration of the guarantee that the Morse elevator

would load grain into cars to capacity without the use of scoops; that before the execution of the written contract for the elevator, the defendant represented to plaintiffs that such elevator, if built according to specifications, would be capable of loading dry grain into cars to capacity without the aid of scooping by hand; that such representations were false; that the plaintiffs relied upon and were induced by such representations to sign the contract; that they were fraudulently made by the defendant to induce plaintiffs to sign the contract; that the Morse elevator would not load cars with dry grain to capacity without the aid of scooping by hand; that the failure of the elevator to load cars with dry grain to capacity without scooping by hand, decreased the value of the elevator $1,300; that it would cost, to replace the concrete foundation under the scales, $50; that the value of the elevator was decreased, by changing the type of grain buckets, $150.

On these findings, judgment was rendered against the defendant on behalf of the plaintiffs for the sum of $1,500, with interest from the date of the judgment at the rate of .6 per cent. per annum, and costs of suit, from which judgment this appeal is prosecuted.

The appellant, by several assignments which we will consider together, urges the insufficiency of appellees' petition, because it alleges the incorrect measure of damages; assails the action of the court in refusing to direct a verdict in his behalf and to charge the jury as he requested on the measure of damages, since, under the testimony, appellees were not entitled to recover on the measure of damages pleaded; challenges as erroneous the charge of the court for submitting to the jury an improper measure of damages; and attacks the judgment of the court inasmuch as it is based on the wrong measure of damages.

It is settled in this state that, for the breach of a building contract, if the defects which constitute the breach can be remedied without impairing the building as a whole, the measure of damages is the reasonable cost of remedying such defects, but if such defects cannot be remedied without impairing the building, the measure of damages is the difference in the value of the building as constructed and its value had it been constructed according to plans and specifications. Totten v. Houghton (Tex. Civ. App.) 2 S.W.(2d) 530, and authorities cited.

The appellant, both by his pleading and his testimony, contends that he had literally performed his contract and erected the elevator in strict compliance with the plans and specifications, but the findings of the jury, amply supported by the testimony, show that the appellant had breached his contract, since he failed to construct the elevator so that it would load grain into railroad cars to their capacity without the necessity of scooping grain by hand. He was therefore not entitled to retain the entire consideration of $7,300 which he had been paid for erecting the elevator, and if he desired to invoke the equitable doctrine of substantial compliance, Atkinson v. Jackson Bros. et al. (Tex. Com. App.) 270 S. W. 848, 38 A. L. R. 1377, if raised by the record, which we doubt, Harrell v. City of Lufkin (Tex. Com. App.) 280 S. W. 174—he should have requested an issue submitting to the jury the measure of damages upon which he insists, or, objected to the measure of damages submitted by the court, and not contented himself with asking the court, in the form of a general charge, to tell the jury that the measure of damages, if any, is the amount it would take to make the elevator load cars to capacity. Isbell et al. v. Lennox et al., 116 Tex. 522, 295 S. W. 920.

The testimony shows that, in order to make the elevator load grain into railroad cars to their capacity, it would be necessary to build the cupola to the elevator longer and six to ten feet higher; to raise the roof, lengthen the studding, raise the leg, automatic scales and spout; and, while such changes are sometimes made, it is, in most cases, impracticable, and, if such changes were made in the elevator at Morse, the building would be impaired and damaged.

Under these facts, which are uncontroverted, the correct measure of damages was the difference between the value of the building as constructed, and the value as it would have been, if erected according to contract.

The record discloses that the grain elevator, provided for by the contract, comprised the building, with certain dimensions, including an office, dump, bins, and engine room with all machinery therefor, consisting of a 10 H. P. engine, automatic scales, wagon scales, shafts and counter-shafts, supported by self-oiling bearings, elevator with cast-iron boot, V-type grain buckets, distributing spouts, indicator, clutches, man lift, pulleys, and belting.

The contract contemplated not only a building but a plant with the tools, apparatus, and machinery to conduct a grain elevator business. This grain elevator or plant was to be completed and delivered in first-class running order, capable of loading railroad cars to their capacity without the aid of scooping the grain by hand.

The jury's findings are that the appellant represented and guaranteed that the plant as designed, would, when built and equipped as the contract stipulated, have such capacity. This was not the expression of an opinion, but an affirmation of a material fact, and a guarantee of the capacity of the elevator, and induced the appellees to sign the contract, accept the plant, and pay therefor.

The failure of the plant to meet the representations and guarantee was a breach of warranty as to its efficiency, subjecting the appellant to damages.

"Any covenant, promise, or assertion of the vendor concerning the quality of the article sold, if relied upon by the vendee and understood by both parties as an absolute promise or assertion, and not a mere expression of opinion, will amount to a warranty. Any representation as to quality made by the vendor on a sale for the purpose of inducing the vendee to purchase, and which did induce him to purchase, amounts to a warranty." Harrell v. McDuffie, 61 Tex. Civ. App. 30, 128 S. W. 1149, 1151. See, also, El Paso & S. W. Ry. Co. v. Eichel & Weikel (Tex. Civ. App.) 130 S. W. 922; Blythe v. Speake et al., 23 Tex. 429; Barnum Wire & Iron Works v. Seley, 34 Tex. Civ. App. 47, 77 S. W. 827; Giles v. San Antonio Foundry Co. (Tex. Civ. App.) 42 S. W. 1020; Detroit Automatic Scale Co. v. G. B. R. Smith Milling Co. (Tex. Civ. App.) 217 S. W. 198; 9 C. J., p. 745, par. 81.

▮ The measure of damages for the breach of a warranty to furnish a machine or a completed plant, in the absence of a claim for special damages, is the difference between the value of the machine or plant as delivered, and the value of such machine or plant if delivered in conformity to the warranty. Stark v. Alford, 49 Tex. 260; A. J. Anderson Elec. Co. v. Cleburne Water, Ice & Lighting Co. (Tex. Civ. App.) 44 S. W. 929; Alamo Mills Co. v. Hercules Iron Works, 1 Tex. Civ. App. 683, 22 S. W. 1097; Nunn v. Brillhart (Tex. Com. App.) 242 S. W. 459; Pioneer Elec. Co. v. McCurdy, 151 Minn. 304, 186 N. W. 776; York Mfg. Co. v. Chelton Ice Mfg. Co., 278 Pa. 351, 123 A. 327; 9 C. J., supra, and authorities cited.

▮ The appellant presents as error the action of the trial court in refusing to direct a verdict in his behalf, because the false representation relied upon was not the statement of an existing fact but related to the performance of an executory contract in the future, and there was no allegation or proof that appellant knew of its falsity or that he had no intention, when it was made, of carrying out the agreement in good faith.

The jury found that the representation was false, was fraudulently made to induce, and did induce, appellees to sign the contract.

The records show that appellant was an experienced and expert builder of grain elevators, having built, according to his testimony, about 680; that he also drew plans and specifications; that appellees did not understand plans and specifications and were ignorant of what requirements were essential in order to construct an elevator of the capacity they desired; that they were assured by appellant that an elevator, constructed according to the plans and specifications he had drawn and presented to them, would have the capability of loading railroad cars to their capacity without the aid of scoops.

This was a material fact entering into the substance of the contract and was stated as a fact and not an opinion. U. S. Gypsum Co. v. Shields (Tex. Civ. App.) 106 S. W. 725, affirmed in 101 Tex. 473, 108 S. W. 1165; Henderson v. R. Co., 17 Tex. 560, 67 Am. Dec. 675; Davis v. Driscoll, 22 Tex. Civ. App. 14, 54 S. W. 43; Huffmaster et al. v. Toland (Tex. Civ. App.) 250 S. W. 468; Clem v. Fulgham (Tex. Civ. App.) 4 S.W.(2d) 280; Shippen v. Bowen, 122 U. S. 575, 7 S. Ct. 1283, 30 L. Ed. 1172; 26 C. J. pp. 1086–1091.

▮ The appellant challenges as error the action of the trial court in admitting oral testimony and a letter, written by one of the appellees to appellant, showing the connection between the contract between appellant and appellees for the erection of an elevator at Silverton, Tex., and the contract between the same parties for the construction of the elevator at Morse, Tex., over the objection that the contract for the elevator at Silverton was made subsequently to the contract involved in this suit; that the contract relative to the Silverton elevator was not an issue in the case; that it was an attempt to vary the terms of the written contract and could form no part of the consideration for the Morse elevator.

Appellees had pleaded fully the relation between the two contracts and that the contract was given to appellant in consideration of certain promises and guarantees as to the capacity of the elevator at Morse.

"It is a settled rule of law that one contract may be the consideration of another, the inducement to the execution thereof, and, where an independent parol agreement has been made as an inducement to the making of a written contract, the former may be proved and enforced, though not referred to in the latter." N. Y. Life Ins. Co. v. Thomas, 47 Tex. Civ. App. 149, 104 S. W. 1074, 1075, and authorities cited.

▮ Testimony is also admissible to show the real consideration in a written contract. Blair & Hughes Co. v. Watkins & Kelley (Tex. Civ. App.) 179 S. W. 531; Reid v. Ragland, 156 S. W. 920. See also, St. Louis Expanded Metal Fireproofing Co. v. Burgess, 20 Tex. Civ. App. 527, 50 S. W. 486.

In our opinion, this assignment does not present reversible error.

▮ The appellant, by several assignments, urges as error the action of the court in admitting the testimony of certain witnesses, relative to the difference in the value of the elevator as constructed, and its value had it been constructed according to the contract,

plans, and specifications, over the objection that the witnesses were not qualified and the evidence had no probative force as to the true measure of damages.

The difference in the value of the elevator as constructed, and its value as it should have been constructed, was alleged by appellees as the measure of damages. The testimony is to the effect that there was no market value for elevators at Morse, Tex., or in that vicinity. The witnesses gave the facts on which they based their opinion; and other witnesses, without objection, testified as to the values, and this testimony was uncontroverted.

These assignments are overruled. St. Mary's Oil Engine Co. v. Allen-Morrow Co. (Tex. Civ. App.) 20 S.W.(2d) 266; Baker v. Farmers' Welfare Union (Tex. Civ. App.) 3 S.W.(2d) 155.

■ The appellant assigns as error the action of the court in admitting testimony of the cost and expense to appellees of employing labor to scoop grain by hand, in order to load cars to their capacity, because such testimony was speculative and of no probative force to show the correct measure of damages.

The appellees had alleged the cost of scooping grain by hand but had not pleaded it as a measure of the damage, and no such issue was submitted to the jury and no such cost or expense was included in the judgment, and, if the admission of such testimony was error, it was not reversible error.

In answer to issues submitted by the court, the jury found that the failure of the elevator to load cars to capacity without scooping decreased the value of the elevator $1,300, and also found that the value of the elevator was decreased in the sum of $150 by the failure of appellant to use the type of grain buckets provided for in the contract.

■ In our opinion the testimony tends to show that the failure of the appellant to furnish the grain buckets, according to contract, contributed to the failure of the elevator to load cars to capacity, and was therefore included in the item of $1,300. If we are mistaken in this, the testimony does show that the grain buckets could be replaced without impairing the building, and, hence, the amount appellees could recover for the change of buckets would be the cost of replacing them with the buckets provided for in the contract. Under this record, the item of $150 is incorrectly included in the judgment.

If appellees will file a remittitur of $150 within ten days, the judgment will be affirmed; otherwise it will be reversed and remanded.