## PIONEER ELECTRIC COMPANY v. J. S. McCURDY.[1]

February 3, 1922.

No. 22,615.

**Sale—warranty—verdict sustained by evidence.**

1. Evidence *held* to support the verdict of the jury to the effect that the contract of sale and warranty involved in the action was made and entered into between plaintiff and defendant and not between defendant and a third person to whom promissory notes for the purchase price were given.

**Notes payable to third person in order to finance the sale.**

2. The promissory notes were given to the third person as a method designed by the agent of plaintiff of financing the main transaction between plaintiff and defendant.

**Sale—implied authority of agent to warrant quality.**

3. An agent with authority to sell property, usually subject to warranty of quality, has implied authority to sell with a warranty of that kind.

**Ratification of unauthorized act of agent by principal.**

4. Where an agent enters into a contract not within his authority, and, without inquiry into the facts surrounding the transaction, the principal accepts and performs the same, receiving and retaining the benefits thereof, there is a ratification of the unauthorized act of the agent.

**Question for the jury.**

5. The evidence made the question of ratification one of fact for the jury.

[1] Reported in 186 N. W. 776.

**Charge to jury—damages not excessive.**

6. The general rule of damages for the breach of a warranty was correctly given to the jury, and the verdict is within the limits thereof as fixed by the evidence.

**Burden on seller to prove.**

7. Matters in mitigation of damages are open to the party charged with a breach of warranty, and the burden rests with him to present the facts.

**No errors in trial court.**

8. The evidence sustains the verdict in all respects and there were no errors in the rulings or instructions or refusals to instruct the jury.

Action in the district court for Chisago county to recover $1,598.91 for goods sold and delivered. The amended answer set up counterclaims for $6,400.09. The case was tried before Searles, J., who when defendant rested, denied plaintiff's motion to dismiss the counterclaim and at the close of the testimony its motion for a directed verdict, and a jury which returned a verdict for $2,558.23 less $1,662.23 in favor of defendant. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Affirmed.

*Bundlie & Kelley* and *S. B. Wennerberg,* for appellant.

*Alfred P. Stolberg* and *George H. Sullivan,* for respondent.

BROWN, C. J.

Action to recover for goods sold and delivered in which defendant interposed a counterclaim for damages resulting to him from an alleged breach of warranty on the sale of other goods and property by plaintiff to defendant. Defendant had a verdict and plaintiff appealed from an order denying its motion for judgment or a new trial.

There is no dispute as to plaintiff's claim for goods sold to defendant, the allegations of the complaint in that respect being admitted by the answer. The issues in litigation and involved on the appeal center around the alleged counterclaim of defendant.

It appears that defendant is a retired farmer residing in the small unincorporated village of Stacy, this state. Plaintiff is a dealer in

electrical supplies and equipment, including certain types and sizes
of farm and other small electrical lighting plants. At the time
alleged in the answer, July, 1919, defendant purchased one of plain-
tiff's lighting plants, through its agent, one Golden, for use in sup-
plying light and power to the inhabitants of Stacy. The negotia-
tions were full and complete, and the agent was fully informed and
well knew the size of the village, the number of inhabitants thereof
and of the quantity of light and power needed to supply the needs
of the place. He selected the particular plant and represented that
it was of sufficient size and capacity to furnish the necessary light
and meet all the requirements for which it was to be purchased, and
otherwise represented the plant as fit and suitable for the purpose.
Defendant knew nothing of such plants, and relied entirely upon the
representations so made to him. 'The bargain was closed and the
plant was subsequently shipped to and installed on the premises of
defendant within the village, under the directions and supervision
of plaintiff's agent, who was a practical electrical engineer. The
representations of the capacity of the plant and its fitness for the
purpose for which it was purchased were untrue, and defendant
claims that it was wholly inadequate and otherwise defective and
worthless; his claim in this respect was sustained by the jury.

1. The assignments of error present several points, the first of
which, in logical order, is the contention that the purchase of the
plant was not made from plaintiff at all, but from the Interstate
Lumber Company, a corporation dealing in lumber and hardware at
Stillwater, with a branch establishment at Stacy in charge of a
local representative. The evidence falls far short of sustaining this
contention. It appears without substantial dispute in the evidence,
taken as a whole, that the transaction took place at Stacy and was
conducted by Golden, the agent of plaintiff. The lumber company
was not a participant in the negotiations nor in the contract of sale
as finally agreed to by Golden and defendant. Defendant, though
financially solvent, had no ready money to meet the cost of the
plant and the agent, at the conclusion of the negotiations, or during
the pendency thereof, set about devising ways and means in that
behalf. He approached the local agent of the lumber company with

a proposition to pay the company a commission if they would take defendant's promissory notes to be given for the plant, and thus advance the necessary cash, and in that way finance the transaction. The offer was communicated to the officers of the lumber company and was accepted. Thereupon the agent, Golden, prepared a typewritten order for the machinery and equipment comprising the major portion of the plant, addressed to the lumber company, and requesting a shipment of the material to defendant at Stacy. After the plant had been installed, as we understand the matter, defendant gave his promissory notes for the purchase price to the lumber company, and the amount thereof, less the commission agreed to be allowed to that company, was paid over to plaintiff.

On these facts the contention that the lumber company was the contracting party, selling and furnishing the plant to defendant, if not wholly without merit, lacks substantial support in the evidence and should not prevail; the earnestness of counsel for plaintiff presents the strongest item in support of the claim. The question was one for the jury, and the verdict finds ample support in the record. Defendant had no dealings with the lumber company in respect to the purchase of the plant, and the order signed and addressed to it, coupled with the promissory notes, was undisputably shown to have been as a means of raising money to take the transaction through, and for no other purpose. The evidence showing the facts was properly admissible. It did not vary or contradict the contract between plaintiff and defendant, for that was wholly in parol. The case in this respect is somewhat similar to Gilbert Gulbrandson Estate, Inc. v. Hart-Parr Co. 142 Minn. 465, 172 N. W. 704, where a like contention was made and not sustained. Whatever the agents or officers of the lumber company did in the matter subsequent to the conclusion of the negotations between defendant and plaintiff's agent Golden, was in furtherance of the promised commission for financing the deal. Plaintiff furnished the plant and it was installed by its agents.

2. The further contention that the agent, Golden, conceding that the transaction was between plaintiff and defendant, was without authority to warrant the plant as of sufficient size and capacity to

fill the requirements for which it was sold, is not sound. Whether Golden had authority to make the sale, or whether his authority in the premises was limited as contended by counsel to taking orders subject to approval at the home office, was made a question of fact by the evidence, and justified the jury in finding that the agent had authority to sell and finally close the contract. The evidence brings the case within the general rule that an agent with authority to sell property, usually the subject of warranty, has implied power to sell with a warranty of capacity and fitness, as binding on the principal as though the agent was clothed with express authority to that effect. The law is well settled on the subject in this state as well as in other jurisdictions. Boynton Furnace Co. v. Clark, 42 Minn. 335, 44 N. W. 121; McCormick v. Kelly, 28 Minn. 135, 9 N. W. 675; Moorhead v. Minneapolis Seed Co. 139 Minn. 11, 165 N. W. 484, L. R. A. 1918C, 391, Ann. Cas. 1918E, 481; 24 R. C. L. 409. The agent in the case at bar in fact made the sale and closed the bargain without report to the principal. It was in parol, and no order from defendant to plaintiff was signed or transmitted for approval. The order given the lumber company was no part of the contract of sale, but solely as a financing feature of the matter.

3. There was evidence also justifying the submission to the jury of the question of ratification, conceding that the agent exceeded his authority in entering into a contract of sale instead of reporting an order for the plant. The facts disclosed imposed upon plaintiff the duty to inquire into the transaction, and, if inquiry had been made, the transaction in its true light naturally would have been disclosed. In that situation plaintiff is charged with knowledge of the facts, and cannot accept the contract so far as favorable and reject its burdens. Ehrmanntraut v. Robinson, 52 Minn. 333, 54 N. W. 188; Johnson v. Ogren, 102 Minn. 8, 112 N. W. 894; 1 Dunnell Minn. Dig. § 181.

4. What has been said disposes of several assignments of error challenging the rulings of the court in the admission and exclusion of evidence, in refusing to strike out certain testimony, and the instructions to the jury, and further discussion of the subject matter thereof becomes unnecessary. There was no reversible error in any

of the rulings complained of, nor in the instructions or refusals to instruct the jury upon particular features of the case. The charge of the learned trial court, taken as a whole, was quite lfull and complete and of a character to be very helpful to the jury. The further assignment that the evidence is insufficient to sustain the verdict is also covered by what has been said on the merits of the case. The evidence fully justified the jury in finding in defendant's favor upon all issues presented to them, and we discover from the record no reason for interference.

5. The court gave to the jury the correct rule of damages, namely, the difference between the value of the plant as warranted and its actual value, and the evidence fully supports the verdict rendered. But counsel earnestly contend that there was error in the refusal of the court to charge that if the jury found that the engines installed as a part of the plant and by which it was operated were alone the cause of the failure of the plant to meet the terms of the warranty, defendant could only recover the cost of replacing the engines with new ones, citing Melby v. D. M. Osborne & Co. 33 Minn. 492, 24 N. W. 253. We do not sustain the point. If the Melby case properly may be applied where so substantial and expensive a part of the article furnished under warranty as a workable single entity, as here disclosed, a doubtful question, it is sufficient to say that the evidence in the case at bar does not sustain the contention that the engines were alone the cause of the failure of the plant of which they formed a part. The plant was shown by the evidence to have been insufficient in other respects, in fact in all respects. The rule of the Melby case does not therefore apply. Wyckoff v. Horan, 39 Minn. 429, 40 N. W. 563; Harris v. Simplex Tractor Co. 140 Minn. 278, 167 N. W. 1045. And moreover defendant interposed a claim of general damages, and presented evidence to sustain it. If plaintiff thought that it would cost less to supply defective parts and thus make a workable machine out of the plant, it had the burden of proof in that respect. Gaar-Scott & Co. v. Patterson, 65 Minn. 449, 68 N. W. 69.

This covers the case and all that need be said in disposing of the appeal. The verdict is sustained by the evidence; there were no

errors in the rulings of the court in the admission or exclusion of evidence, nor in the instructions or refusals to instruct the jury, and the damages awarded are within the limits fixed by the evidence and the rules of law applicable to the facts.

Order affirmed.

Mr. Justice Hallam took no part.