MALOOLY *v.* YORK HEATING & VENTILATING CORP.

1. APPEAL AND ERROR—LEAVE TO APPEAL—INTERLOCUTORY ORDER—SERVICE OF PROCESS.

    The denial of an application for leave to appeal from an interlocutory order, such as order denying motion by specially appearing defendant to set aside service of process, does not foreclose litigants from ultimate review of interlocutory order on appeal in the principal case.

2. SAME—LEAVE TO APPEAL—DISCRETION OF COURT—CERTIORARI.

    Denial of leave to appeal is ordinarily an act of judicial discretion equivalent to denial of certiorari which is not equivalent to an affirmation of decree sought to be reviewed.

3. CORPORATIONS — FOREIGN CORPORATIONS — PROCESS — SERVICE ON REPRESENTATIVE—STATUTES.

    Service of process on employee of foreign corporation is deemed service on corporation itself where, in addition to soliciting orders, he supervised installation of refrigeration equipment and undertook to remedy defects in it when they appeared (3 Comp. Laws 1929, § 14094).

4. SAME—SERVICE OF PROCESS—DOING BUSINESS.

    Mere presence of agent of foreign corporation within this State is not sufficient to render it amenable to process of courts of this State; the corporation must also be doing business within the State.

5. SAME—DOING BUSINESS—INFERENCES.

    It is a reasonable inference that business of foreign corporation was conducted in the same way when process was served upon its agent as when cause of action arose, where record does not disclose any change in the manner of doing business in this State.

(240)

6. SAME—JURISDICTION.

Jurisdiction over a foreign corporation is usually entertained when the cause of action against it arose within the State and the corporation is carrying on business within the State at the time of service of process, since such principle is fair and just and complies with due process clause (U. S. Const. Am. 14).

7. SAME—INTERSTATE BUSINESS—SERVICE OF PROCESS.

Fact that foreign corporation transacts only interstate nontaxable business within this State does not render it immune from service of process of courts of this State.

8. SAME—DOING BUSINESS.

Foreign corporation which furnished refrigeration equipment to owners of slaughterhouse in this State *held,* under the facts presented, to be doing business here notwithstanding attempt to have contract of sale made in name of local distributor.

9. CONTRACTS—OFFER AND ACCEPTANCE—SALES—DELIVERY OF GOODS.

Contract of sale as to refrigeration equipment between plaintiffs, slaughterhouse owners, and defendant, foreign corporation and manufacturer, *held,* consummated, where although plaintiffs' offer to purchase direct was expressly declined by defendant, latter's subsequent acts were sufficient to constitute acceptance, where actual delivery of apparatus assembled to meet plaintiffs' needs and subject to conditions with which only plaintiffs could comply was made through local distributor against whom defendant failed to press for payment, and defendant attempted to make equipment operate successfully.

10. SAME—DELIVERY OF GOODS TO OFFERER.

Offeree is not obliged to deliver goods to offerer who refuses to deal other than directly, but having done so, it must accept the consequences of making a contract.

11. SAME—MEETING OF THE MINDS.

To consummate a contract of sale there must be a meeting of the minds of the parties thereto.

12. SAME—IMPLIED ACCEPTANCE OF OFFER.

Acceptance of an offer to contract may be implied from the acts and circumstances of the parties.

13. SAME—IMPLIED ACCEPTANCE OF OFFER—GUARANTY—PERFORM-
ANCE.

Plaintiffs' offer to purchase refrigeration equipment directly
from foreign corporation *held*, to have been impliedly accepted
where it sent the guaranty plaintiffs had insisted upon in their
negotiations and later the equipment was delivered and in-
stalled under the direction of its representatives.

14. SAME—PERFORMANCE AS ACCEPTANCE.

The contract of a party in making performance in pursuance of
a definite proposition is an acceptance of the proposition.

15. SALES—WARRANTY AS PART OF CONTRACT.

A warranty must be a part of the contract of sale upon which
the minds of the parties meet and cannot exist without it.

16. SAME—LIABILITY OF MANUFACTURER FOR BREACH OF SPECIAL
WARRANTY.

Refrigeration equipment manufacturer which gave special war-
ranty as to suitability of its product for plaintiff slaughter-
house owners' particular purposes *held*, liable for breach
thereof where contract of sale was with plaintiffs and not, as
it claimed, with local distributor.

17. APPEAL AND ERROR—FINDINGS OF COURT—EVIDENCE.

Judgment of $32,024.28 against foreign corporation, manufac-
turer of refrigerating equipment, for breach of special war-
ranty and damages *held*, proper under the findings of the trial
court supported by evidence.

WIEST, J., dissenting.

Appeal from Wayne; Brennan (John V.), J., pre-
siding. Submitted June 20, 1934. (Docket No. 107,
Calendar No. 37,892.) Decided January 29, 1935.
Rehearing denied April 11, 1935.

Action by Ameen Malooly, Abraham Azar and Na-
jeeb Boudia, copartners, doing business as Malooly
& Azar Company, against York Heating & Ventilat-
ing Corporation, a Pennsylvania corporation, and
Euth-Lambrecht Company, a Michigan corporation,
for breach of warranty and negligence in installation

of a refrigerating unit.  Set-off by defendant Euth-Lambrecht Company.  Judgment for plaintiffs against defendant York Heating & Ventilating Corporation and for defendant Euth-Lambrecht Company against plaintiffs.  Defendants appeal.  Affirmed.

*J. F. Youssephany (Monaghan, Crowley, Reilly & Kellogg, of counsel), for plaintiffs.*

*Wiley, Streeter, Smith & Ford (Charles J. Staples, of counsel), for defendants.*

BUSHNELL, J.  For some years plaintiffs, located in Detroit, have been engaged in the business of slaughtering animals and selling dressed meats, particularly lamb and veal, to retail merchants.  Desirous of serving their increased trade, an adjoining building was rented for the purpose of enlarging the plant.  Defendant York Heating & Ventilating Corporation is a Pennsylvania corporation.  Their advertisement of a system of cold storage and meat cooling devices came to the attention of plaintiffs.  Shortly thereafter one of the copartners, Boudia, talked with Cohen of the Burge Ice Machine Company of Detroit about refrigerating machines and went to Chicago in January of 1929 for the purpose of seeing the York system in operation.  There he met Gillian of the Chicago office of the York company, and described to him the nature of plaintiffs' business, explained that he had no technical knowledge of refrigeration and apparently made careful inquiry into the operation of the equipment. Gillian took Boudia to various packing plants where his employer's machines were being used in beef coolers and sausage factories.  Boudia claims that when

Gillian's attention was called to the fact that lamb and veal were more tender than beef and sausage, he replied: "these units are revolutionizing the industry," and said in effect that the machines would do almost anything: "they will preserve the lamb as well as they will the beef." Boudia concluded his investigation and asked for a written guaranty, whereupon Gillian explained that his company would not sell direct but would do business through Burge Ice Machine Company, or any other local dealer; Boudia declined to do business on this basis and insisted upon dealing only with the York company. After Boudia returned to Detroit, Euth of defendant Euth-Lambrecht Company called upon plaintiffs and the parties had a discussion about the units. Later York sent Boudia a letter signed by Gillian referring to the Chicago conversation and reading in part:

"At your request we are pleased to give you the following guaranty which in turn is given to the Burge Ice Machine Company, who we understand will install this equipment and as you know, will sell the machine to you as we do not do any installation work ourselves and this equipment will have to be sold through the Burge Ice Machine Company, who can give you the same price on our equipment that we give to you ourselves."

The terms of the guaranty were then given, the letter stating that a blue print would follow. The record contains the blue print and a detailed proposal from Burge, which was not executed, the plaintiffs claiming they refused to sign the proposal because they would deal only with York. The Euth-Lambrecht Company was later evidently substituted for Burge for without any further discussion be-

tween the parties, the proposed units arrived at plaintiffs' plant, the bill of lading showing delivery to the carrier by York at Bridgeport, Pennsylvania, for transportation to Euth-Lambrecht Company, Detroit. The equipment was installed by the Euth-Lambrecht Company under the direction of engineers of York and Euth, and McConnor, the Detroit sales representative of York.

Some time in April, shortly before the Greek easter, May 5, 1929, or thereabouts, the plant was ready for operation and the box was filled with dressed calves; the next morning it was discovered that they were black, dry and unfit for sale, McConnor, after conferring with Gillian, had alterations made, changing the motor, etc., and the box was filled with lamb, with the same result. Every effort was subsequently made to adapt the equipment to plaintiffs' needs by changing ducts, adding moisture, installing new ventilating equipment, etc., during which time, one night through inadvertence of someone a gasket blew in the ammonia line asphyxiating some 150 live lambs. After several weeks of effort the representatives of both York and Euth-Lambrecht Company said they could do no more and plaintiffs in August removed the York equipment and installed in its place another type of cooling system. Euth-Lambrecht Company requested the return of the equipment but it was refused, plaintiffs stating they were ready to deliver to York, from whom they claim the purchase was made. While plaintiffs' claims are contested, it seems undisputed that no written contract was ever executed by the parties and that the damage resulted from the faulty operation of the York equipment.

Defendants appeal from a judgment against York Heating & Ventilating Company in the sum of

$32,024.28 and for defendant Euth-Lambrecht Company on set-off against plaintiffs in the sum of $868.13, the last-named defendant claiming a judgment against plaintiffs in the sum of $3,635.33.

Plaintiffs declared in trespass on the case upon two counts, the first being a cause of action against the defendant York alone, claiming a breach of warranty, express and implied, and negligence on the part of the defendant; the second count joining both defendants, in which it is alleged that Euth-Lambrecht Company acted as agent for the York company. To these are added the common counts in assumpsit as to both defendants. There is attached to plaintiffs' declaration a bill of particulars itemizing claimed damages totaling $52,349.11, covering five months' rental of the premises, the value of the shrinkage of the dressed meats, the prices sacrificed by plaintiffs, value of live stock asphyxiated, loss of business and the cost of replacement of equipment.

Defendant York appeared specially and moved to set aside the service of summons, averring that it was not doing business nor had it at any time done business within the State, and that McConnor, upon whom service was had, was not connected with the defendant corporation other than in the capacity of soliciting orders. Judge Lamb of the twenty-eighth judicial circuit, sitting in Wayne county, denied the motion and later an application for leave to appeal from the order of the circuit court was denied. York then answered plaintiffs' declaration, as did Euth, and the cause was heard before a judge of the recorder's court of the city of Detroit acting as a circuit judge of Wayne county, the parties waiving their demand for a trial by jury.

The first question to be determined is that of service, appellee contending that the question of service

of process cannot be raised at this time. We do not construe the denial of an application for leave to appeal as foreclosing litigants from ultimate review of interlocutory orders on appeal in the principal case. The denial of an application for leave to appeal is ordinarily an act of judicial discretion equivalent to the denial of certiorari. It is held that the denial of the writ of certiorari is not equivalent of an affirmation of the decree sought to be reviewed. *United States* v. *Carver,* 260 U. S. 482 (43 Sup. Ct. 181); *Hamilton-Brown Shoe Co.* v. *Wolf Bros. & Co.,* 240 U. S. 251 (36 Sup. Ct. 269). The question would not arise under our present rules as Court Rule No. 18, § 4 (1933), provides:

"A defendant may, within the time for appearing, file a motion to quash the service of the process, on the ground that such service was invalid. Said motion may be supported by affidavits. Every denial of a motion to quash the service of process shall be without prejudice, whereupon the defendant shall have the right to appear generally and plead, and upon general appeal assign error on the trial court's denial of said motion."

Plaintiffs served McConnor as agent of defendant York, a foreign corporation. Was this service good? 3 Comp. Laws 1929, § 14094, provides:

"In all cases where suit is brought against a foreign corporation, process may be served upon any officer or agent of such corporation within this State, and any person representing such corporation in any capacity, shall be deemed an agent within the meaning of this section."

To paraphrase the concluding paragraph of the opinion of Mr. Justice NELSON SHARPE in *Cheli* v. *Cudahy Brothers Co.,* 260 Mich. 496: Had McCon-

nor been merely an agent soliciting business for the defendant in this State, a different question would be presented. But, as shown by the testimony, he performed services other than as a solicitor. He supervised the installation of the equipment; when it failed to function properly he consulted his principals and undertook to remedy the defects. He worked with other employees of York who came here for the definite purpose of correcting the difficulty. York also purchased fabricated material in Detroit for use in its attempt to make the apparatus work. McConnor was the agent of the defendant corporation within the language of the above-quoted section as it has been construed by this court. See *Republic Acceptance Corp.* v. *Bennett,* 220 Mich. 249, and *A. Harvey's Sons Manfg. Co.* v. *Sterling Materials Co.,* 247 Mich. 317.

The more difficult question is whether York was doing business in this State so as to be amenable to service of process. The mere presence of the agent in the State is not alone sufficient; the corporation must also be doing business within the State. *Bachler* v. *Maytag Co.,* 251 Mich. 439.

The affidavit of defendant York company's vice-president describes its Detroit office as a "so-called branch sales office," but denies the transaction of local business and avers that activity in Michigan has been "confined and limited to the solicitation of orders for said York equipment." The affidavit also says:

"Mr. McConnor, at his own expense, and pursuant to said agreement, has provided for himself suitable offices in Detroit and for the promotion of his said solicitations of York equipment, has placed the name of defendant, York Heating & Ventilating Corporation on his office door and done whatever

else he has considered fair and proper in obtaining such orders, including the listing of defendant's name in the public telephone books.''

The record does not disclose any change in York's manner of doing business in Michigan subsequent to the installation of the equipment and it is a reasonable inference that its business was being conducted in the same way when process was served upon Mr. McConnor. The limitations described do not account for York's actions in connection with the installation of equipment. The agent was here, not only for the purpose of securing business for his principal, but he was available to serve his employers in connection with the installation and operation of sold equipment. We are satisfied from an examination of the record that York's course of dealing was a carefully devised plan to obtain all the benefits, while evading all the burdens incurred by doing business in the State.

There may be some confusion among the authorities on the point, but jurisdiction is usually entertained when the cause of action against the corporation occurs within the State, and when it appears that the corporation is carrying on business within the State at the time of the service of process. Such principle is fair and just and complies with the construction by Federal courts of the ''due process'' clause of the fourteenth amendment. See _Maverick Mills_ v. _Davis,_ 294 Fed. 404; _Davis_ v. _Farmers Co-Operative Equity Co.,_ 262 U. S. 312 (43 Sup. Ct. 556); and compare _Simon_ v. _Railway Co.,_ 236 U. S. 115 (35 Sup. Ct. 255). It should be remembered, we are not defining the term ''doing business'' for the purpose of determining whether defendant York is taxable or subject to the qualify-

ing laws of this State, but only for the purpose of determining its amenability to service of process. As was said in *Tauza* v. *Susquehanna Coal Co.,* 220 N. Y. 259, 267 (115 N. E. 915):

"We are to say, not whether the business is such that the corporation may be prevented from being here, but whether its business is such that it is here."

And in *International Harvester Co.* v. *Commonwealth of Kentucky,* 234 U. S. 579, 589 (34 Sup. Ct. 944):

"We are satisfied that the presence of a corporation within a State necessary to the service of process is shown when it appears that the corporation is there carrying on business in such sense as to manifest its presence within the State, although the business transacted may be entirely interstate in its character. In other words, this fact alone does not render the corporation immune from the ordinary process of the courts of the State."

See, also, the language of this court in *A. Harvey's Sons Manfg. Co.* v. *Sterling Materials Co., supra,* where a foreign corporation which sold goods to plaintiff in this State, through an agent working on a commission only and taking orders subject to confirmation, and on complaint of plaintiff sent its representative to adjust a dissatisfaction, was held to be doing business in the State so as to be amenable to service of process here, although it maintained neither office nor warehouse, and kept no stock of goods in this State.

Even though York's part in the transaction be thinly disguised by the attempt to have the contract made in the name of a local distributor, the defendant York was amenable to service of process in this

State and, under the facts presented, it was doing business in this State.

Defendants say that before plaintiffs can recover in this cause they must establish that a contract of sale existed between them and the defendant York. It is true there is an absence of executed written instruments, but plaintiffs offered to buy direct and though defendant York expressly declined to accept the offer, their subsequent acts are sufficient to constitute acceptance. There was actual delivery of the goods through Euth and we must take both the acts and the oral statements into consideration, with such writings as exist, in order to determine the relationship between the parties.

The language of York's written proposal to Euth indicates that the apparatus was assembled to meet plaintiffs' requirements in that the size of the various rooms to be served is given. Among its general conditions are: ''Purchaser is to provide free and sufficient opening for machinery to be installed;'' title was to be retained by York; ''equipment shall not become an accession to the real estate;'' it was subject to removal on nonpayment, etc. None of the conditions were capable of performance by Euth but only by plaintiffs.

McConnor, acting for York, gave Euth a written revision of the original proposal, including a guaranty substantially in the same form as that which Gillian, acting for York, gave to Burge, both of which we quote later. The transaction is comparable to that in *Martin* v. *American Magnestone Corp.* (Mo. App.), 247 S. W. 465, where a salesman of defendant made a guaranty of quality as an inducement to the sale of building material, but insisted that the order must be given through a

local dealer. The court held that the sale was made direct and that the defendant was liable on its warranty. In the case before us a written warranty was given plaintiffs based upon York's acquaintance with plaintiffs' needs, and it is a reasonable inference that the equipment was designed and manufactured especially for plaintiffs. The purchaser maintained a consistent attitude throughout the entire affair, and refused to deal with either Burge or Euth. The mere refusal to enter into a formal, direct contract of sale does not affect the result, in view of the plaintiffs' unequivocal statement that they insisted upon the transaction being supported by York's responsibility and skill. York was not obliged to ship the goods, but having done so, it must accept the consequences. It is significant that Euth, at the time of trial, had not paid York any money for the installed apparatus and when asked why, answered:

"Before we had time for it, before we got our money, the trouble was started. York had been very kind to us in not forcing the payment."

Again plaintiffs' counsel insisted:

"You mean when the trouble started York said to you, 'Notwithstanding you were the purchaser of this property, we will not force payment?'

"A. York was standing with their agreement to us. We make arrangements, if they are not satisfactory to the customer, we would send them back and get our credit for it. No need for payment."

York's interest in the attempts to produce the successful operation of the apparatus speaks louder than their protestation of a lack of contractual interest. The contract was fully performed as far as it could be performed by York and the plaintiffs.

To consummate a contract of sale there must be a meeting of the minds of the parties thereto. *W. C. Sterling & Son Co.* v. *Watson & Bennett Co.,* 193 Mich. 11. Here each of the parties offered to contract with the other on certain terms, neither of which offers was expressly accepted. However, when York sent plaintiffs the guaranty, one of the things they had insisted upon during the negotiations, it may well have appeared to plaintiffs that York was beginning to accede to their demands to deal direct. Later the equipment arrived in charge of York's representatives. This may have substantiated plaintiffs' belief that York was accepting the offer to deal direct. An acceptance of an offer to contract may be implied from the acts and circumstances of the parties. In *Farmers' Handy Wagon Co.* v. *Newcomb,* 192 Mich. 634, where defendant had canceled his order for a silo but nevertheless it was delivered, we held this to be an offer and that when defendant accepted the silo and exercised acts of ownership, he impliedly accepted the offer. Where defendant offered to buy five cars of sugar and plaintiff was able to deliver but three, it was held that acceptance of the three cars "might properly be held to estop the defendant from denying it had accepted plaintiff's counter proposition to sell it three cars." *Howell* v. *Grocers, Inc.* (C. C. A.), 2 Fed. (2d) 499.

A contract was established where plaintiff returned a "confirmation" of the order containing an alteration of the original terms of defendant's offer, followed by a recognition of the existence of the contract and the acceptance of shipment. *Gilbert Grocery Co., Inc.,* v. *Howell* (C. C. A.), 289 Fed. 474.

"The contract of a party in making performance in pursuance of a definite proposition is an accept-

ance of the proposition." *Lang & Gros Manfg. Co.* v. *Ft. Wayne Corrugated Paper Co.* (C. C. A.), 278 Fed. 483, 487.

See, also, *Gilbert Gulbrandson Estate, Inc.,* v. *Hart-Parr Co.,* 142 Minn. 465 (172 N. W. 704), and *Pioneer Electric Co.* v. *McCurdy,* 151 Minn. 304 (186 N. W. 776).

What as to the warranty? It is clear that a warranty must be a part of the contract itself upon which the minds of the parties meet and cannot exist without it. *Murphy* v. *Gifford,* 228 Mich. 287. But defendant says that the contract was between York and Euth, and any warranty it may have given the plaintiffs is not available because of a lack of privity. York knew what plaintiffs needed and undertook to supply their needs. It is not merely a case of implied warranty, but is one of special warranty. The language in the original proposal to plaintiff (the so-called Burge warranty) is:

"We guarantee these units to be free from all mechanical defects in workmanship, material and design. We also guarantee that based on the information contained in your drawing as to building construction and the information given us by you as to conditions surrounding the project, the equipment specified herein will be capable of maintaining an average temperature of 40° in the pre-chill cooler and 38° or above in the shipping cooler, when furnished with ammonia at a back pressure of not to exceed 20 pounds.

"These units will eliminate condensation from the ceiling and walls of the cooler and when recirculating all air will maintain a relative humidity of 80 per cent. or better."

That of the Euth proposal is similar in effect and reads:

"We guarantee that under normal operating conditions when these units are installed and operated

in accordance with our instructions, and furnished with sufficient refrigeration at the temperatures or back pressures specified in the coils, they will have sufficient capacity to cool these rooms, constructed in accordance with details furnished us by you, to an average temperature of not less than 33 degrees F. when the outside temperature is 90 degrees F. or below; the air in the rooms being recirculated. * * * We further guarantee that the relative humidity in the holding room will not fall below 80 per cent. when the cooling unit is in operation.''

No one seriously disputes the failure of the equipment to comply with the language quoted.

Defendants also contend that the judgment entered is contrary to the weight of the evidence and unsupported by the testimony. The facts are rather intricate, but were fully considered by the court and those items about which there might be reasonable conjecture were eliminated. The court entered into a lengthy discussion as to the computation of damages and included in its findings a chart setting up the volume of plaintiffs' sales in 1929 and 1930 over a period of 11 comparable months. The opinion discloses the process through which the court made its computation, all of which seems correct. We are not disposed to go behind the findings of fact on the part of the trial court, sitting without a jury, and are satisfied that the proper conclusion was reached. We can see no profit in adding to the length of our opinion by quoting from or discussing the able one of the learned trial judge. The records and briefs are available for those who care to look into the proofs and the manner of computing such damages.

The judgment is affirmed, with costs to appellees.

Potter, C. J., and Nelson Sharpe, North, Fead, Butzel, and Edward M. Sharpe, JJ., concurred with Bushnell, J.

Wiest, J. (*dissenting*). I cannot concur in the opinion of Mr. Justice Bushnell.

Defendant refused to sell the equipment direct to plaintiff and the purchase was made from a resident dealer. Assistance in installing and endeavors in aid of the local dealer did not render defendant subject to process. In order to render defendant subject to process the service had to be not only upon its agent but at a time when it was carrying on business in this State. The point involves a Federal question and is ruled by *Consolidated Textile Corp.* v. *Gregory,* 289 U. S. 85 (53 Sup. Ct. 529), and cases there cited. That the foreign corporation was carrying on business in this State at the time process was served cannot be based upon an inference or presumption that its former violation, if any, of our law on the subject continued. In the absence of proof the inference is to the contrary.

The judgment against the York Heating & Ventilating Corporation should be reversed, without a new trial, and with costs to that defendant.