*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 24, 2019

Plaintiff-Appellee,

v

No. 339953
Oakland Circuit Court
LC No. 2011-237051-FC

FUAD FAROUK SHEENA,

Defendant-Appellant.

Before: BOONSTRA, P.J., and SAWYER and TUKEL, JJ.

PER CURIAM.

Defendant was convicted of two counts of assault with intent to murder, MCL 750.83, and one count of assault with intent to do great bodily harm less than murder, MCL 750.84. After defendant was convicted but before he was sentenced, defendant's attorney, Robert Adams, was replaced by a new attorney, Martin Leaf. On February 28, 2012, defendant was sentenced to concurrent sentences of 14 to 30 years' imprisonment for the two counts of assault with intent to murder convictions, and 3 to 10 years' imprisonment for the one count of assault with intent to do great bodily harm less than murder conviction. After unsuccessfully appealing his convictions and sentences, but receiving a remand for an evidentiary hearing regarding the ineffective assistance of counsel, *People v Sheena*, 497 Mich 1021 (2015), defendant sought the recusal of the trial judge, Oakland Circuit Court Judge Daniel P. O'Brien, based on alleged anti-Semitic statements made in an unrelated civil case that occurred during the pendency of defendant's appeal where Leaf, who is Jewish, was the attorney for the plaintiff. Defendant's attempts to recuse Judge O'Brien were unsuccessful, and a *Ginther* hearing was held. After the *Ginther* hearing, Judge O'Brien determined that Adams was not ineffective and entered an order denying defendant's motion for a new trial. Defendant now appeals as of right the trial court's order denying his motion for a new trial. We affirm.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant makes three arguments that Adams was ineffective. He argues first that after Dr. Michelle Hill of the Forensic Center issued a report finding defendant to not be insane, and

after Adams successfully obtained from the trial court the appointment of a second expert, Dr. Saul Forman, M.D., a psychiatrist, who reached the same conclusion, Adams should have sought the appointment of a third expert witness to examine defendant and issue a report on insanity. Defendant also argues that Adams failed to vet Dr. Forman before Adams obtained his appointment and Dr. Forman evaluated defendant. Finally, defendant argues that, absent obtaining a third expert, Adams was ineffective for not calling either or both of Dr. Hill and Dr. Forman in support of an insanity defense, notwithstanding their conclusions that defendant was not insane.

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

> To prevail on a claim of ineffective assistance of counsel, a defendant bears a heavy burden to establish that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different. Counsel's performance should be evaluated at the time of the alleged error without the benefit of hindsight. A defendant must overcome a strong presumption that counsel's actions constituted sound trial strategy." [*People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016) (citations omitted).]

The Sixth Circuit Court of Appeals has noted that "the threshold issue is not whether [defendant's] attorney was inadequate; rather, it is whether he was so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v Morrow*, 977 F2d 222, 229 (CA 6, 1992). Further, "[t]he fact that the strategy chosen by defense counsel did not work does not constitute ineffective assistance of counsel." *People v Williams*, 240 Mich App 316, 332; 614 NW2d 647 (2000). "[A] reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *People v Gioglio*, 296 Mich App 12, 22-23; 815 NW2d 589 (2012), vacated on other grounds, 493 Mich 864 (2012).

And it is a matter of trial strategy in choosing whether to pursue a particular defense theory. *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995). Trial "counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Trial counsel's " '[d]ecisions regarding . . . whether to call or question witnesses are presumed to be matters of trial strategy.' " *Solloway*, 316 Mich App at 190, quoting *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). " '[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense.' " *Solloway*, 316 Mich App at 190, quoting *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009), citing

*People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). " 'A substantial defense is one that might have made a difference in the outcome of the trial.' " *Chapo*, 283 Mich App at 371, quoting *Kelly*, 186 Mich App at 526. " '[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. . . . [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004), quoting *Strickland v Washington*, 466 US 668, 691-692; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

At the time of defendant's trial, the defense of legal insanity was codified at MCL 768.21a and provided, in relevant part, as follows:

> (1) It is an affirmative defense to a prosecution for a criminal offense that the defendant was legally insane when he or she committed the acts constituting the offense. An individual is legally insane if, as a result of mental illness as defined in [MCL 330.1400[1]], . . . that person lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law. Mental illness or having an intellectual disability does not otherwise constitute a defense of legal insanity.
>
> * * *
>
> (3) The defendant has the burden of proving the defense of insanity by a preponderance of the evidence.

Defendant claims that "[i]t was not a reasonably objective decision for [Adams] to consult only Dr. Forman in preparation for trial." However, contrary to defendant's assertion, Dr. Forman was not the only mental-health professional that Adams consulted. Before enlisting the help of Dr. Forman, Adams requested a forensic review of defendant for competency and criminal responsibility. This request was granted, and defendant, as noted, was evaluated by Dr. Michelle Hill, a psychologist of the Forensic Center. Dr. Hill determined that defendant did not meet the definition of legal insanity because, although defendant "lacked the substantial capacity to appreciate the nature, quality and wrongfulness of his actions, and he was unable to conform his behavior to the requirements of law," such behavior was not the result of a "mental illness," as defined by the mental health code. It was at that time that Adams, unsatisfied with Dr. Hill's findings and report, decided to file a notice of intent to pursue an insanity defense (contrary to Dr. Hill's conclusion) and sought and received an order from the trial court appointing Dr. Forman. Although defendant claims that Adams did not vet Dr. Forman before Dr. Forman

---

[1] The statute at the time actually erroneously referenced MCL 330.1400a. But MCL 330.1400a had been repealed for quite some time. See 1995 PA 290. Instead, 1995 PA 290 relocated the definition of "mental illness" to MCL 330.1400 of the mental health code, where that term is defined as "a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400(g).

evaluated defendant, the record belies this assertion. Adams had used Dr. Forman in previous cases, and Dr. Forman was even recommended to Adams by other attorneys. Adams also stated that Dr. Forman was "reputable," "honest," and "competent." Dr. Forman thereafter issued a report in which he agreed with the analysis of Dr. Hill. Dr. Forman explained that defendant had a "personality disorder," which in his opinion did not qualify as a "mental illness" under the statute.

It was only after Dr. Forman issued his report that Adams concluded there was no viable basis for pursuing an insanity defense. Additionally, although defendant claims that Adams failed to investigate and failed to attempt to secure an expert witness who supported an insanity defense, the above demonstrates this was not the case. Adams had a duty to reasonably investigate whether the legal insanity defense was a viable defense. *Grant*, 470 Mich at 485. By requesting an evaluation of defendant and seeking a second opinion after the first opinion was unfavorable, Adams fulfilled that duty. Although legal insanity may have been a substantial defense, when two professionals opined that defendant did not meet the legal definition of insanity due to a lack of a "mental illness," Adams did not make an unreasonable decision to abandon pursuit of the insanity defense.

Defendant also argues that because of the substantial controversy in the area of legal insanity defense, Adams's efforts at understanding the defense were inadequate. Defendant relies on the opinions of four separate medical professionals, whose opinions were obtained by Leaf after defendant was convicted, to argue that Adams's actions did not constitute reasonable trial strategy. We disagree.

Defendant would have this Court rely on the benefit of hindsight in evaluating Adams's performance and trial strategy. Defendant points to the conclusions of Dr. Philip Margolis, Dr. Michael Seyffert, Dr. Sam Ajluni, and Dr. Steven Miller as support for his argument that there were experts who would have testified that defendant was legally insane. However, the presence of these other opinions, which were not known to Adams at the time, does not retroactively make Adams's decision to rely on the opinions of Dr. Forman and Dr. Hill unreasonable. To do so would be to engage in hindsight analysis, which is not permitted. *Solloway*, 316 Mich App at 188.

Further, defendant attempts to rely on Dr. Margolis's affidavit and a newer version of the Diagnostic and Statistical Manual (DSM-5), which had not yet been published at the time of defendant's trial, to argue that defendant was not criminally responsible for his actions and that Adams was ineffective for not being familiar with the DSM. However, since it was impossible for Adams or anyone else to have relied on DSM-5 at the time of defendant's trial, any such argument is not persuasive. It is well established that counsel's performance must be measured at the time of his actions. See *id*. ("Counsel's performance should be evaluated at the time of the alleged error without the benefit of hindsight.").

Defendant next contends that even if Adams could not obtain another expert, he should have called either or both of Dr. Hill and Dr. Forman to support defendant's legal insanity defense. Failure to have done so, defendant contends, renders Adams's conduct ineffective. We disagree.

As an initial matter, Adams was barred from calling Dr. Hill as a witness when the trial court granted the prosecution's motion in limine to preclude her testimony. Thus, calling Dr. Hill as a witness was not an option, and it was inherently reasonable for Adams to not call her. Even if it were possible, Adams could have reasonably concluded that calling Dr. Hill as a witness would be unfavorable to the defense given her conclusion that defendant did not have a "mental illness," thereby precluding a finding of legal insanity. With respect to Dr. Forman, Adams could have reasonably concluded that, based on the similarity between the reports of Dr. Hill and Dr. Forman, calling Dr. Forman would not have been beneficial. In fact, Dr. Forman even told Adams that calling him as a witness for defendant would likely hurt defendant's case.

Therefore, defendant has failed to overcome the heavy burden in showing that his trial counsel was ineffective.

## II. JUDICIAL BIAS

Finally, defendant argues that Judge O'Brien should have been recused for an allegedly anti-Semitic statement he made in an unrelated civil case.[2] This issue is barred by the law of the case doctrine.

"The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue. Thus a question of law decided by an appellate court will not be decided differently on remand or in a subsequent appeal in the same case." *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001). The doctrine applies "only to issues actually decided, either implicitly or explicitly, in the prior appeal." *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000). When the prior appeal involves the same set of facts, parties, and question of law, the law of the case doctrine applies. *Manistee v Manistee Fire Fighters Ass'n, Local 645, IAFF*, 174 Mich App 118, 125; 435 NW2d 778 (1989). "The law of the case may be viewed as shorthand for the holding of a prior decision between the same parties which is applied by a lower court upon remand or an appellate court upon subsequent review." *Topps-Toeller, Inc v Lansing*, 47 Mich App 720, 727; 209 NW2d 843 (1973). "[L]aw of the case offers the same parties a measure of certainty by according finality to the litigated issues until the cause of actions is fully litigated, including retrials or appeals, and the superseding doctrines of res judicata and collateral estoppel become effective." *Id*. at 729.

Defendant's current challenge to the recusal of Judge O'Brien involves the same set of facts, the same parties, and the same question of law as was litigated in defendant's prior appeal. As the prosecution points out, the issue of Judge O'Brien's recusal was fully litigated in the Oakland Circuit Court before the *Ginther* hearing. When defendant exhausted his options in the

---

[2] It is worth noting that in that civil case, while not applicable to our law-of-the-case analysis due to different parties being involved, this Court concluded that "[n]othing whatsoever in the trial court record suggests any such bias" and that "[t]he accusation is wholly without basis." *Deming v CH Novi, LLC*, unpublished per curiam opinion of the Court of Appeals, issued October 15, 2013 (Docket No. 309989), p 2.

lower court, he appealed to this Court, arguing that the trial court erred in denying the motion for referral to the SCAO and for a de novo hearing. Defendant's application for leave to appeal discussed the basis for his motion for recusal, namely the allegedly anti-Semitic opinion by Judge O'Brien and the fact that Adams was a family friend of Judge O'Brien. However, this Court denied defendant's application for leave to appeal in Docket No. 333921 because there was a "lack of merit in the grounds presented." *People v Sheena*, unpublished order of the Court of Appeals, entered August 17, 2016 (Docket No. 333921).[3]

Generally, orders denying leave to appeal are considered acts of judicial discretion and do not express an opinion on the merits of the case. *Great Lakes Reality Corp v Peters*, 336 Mich 325, 328-329; 57 NW2d 901 (1953); *Malooly v York Heating & Ventilating Corp*, 270 Mich 240, 247; 258 NW 622 (1935); *West Mich Park Ass'n, Inc v Fogg*, 158 Mich App 160, 166; 404 NW2d 644 (1987). However, in this Court's prior order denying defendant's application for leave to appeal, the Court specifically considered the merits of the issue presented and expressly held that it was denying leave "for lack of merit in the grounds presented." *Sheena*, unpub order. Therefore, because the prior appeal involved the same set of facts, parties, and issue (whether Judge O'Brien should be disqualified), and this Court found that there was no merit to the claim, the law of the case doctrine applies. See *People v Douglas*, 122 Mich App 526, 529-530; 332 NW2d 521 (1983).

Nevertheless, the law of the case doctrine merely expresses the practice of courts to maintain consistency and to avoid reconsidering matters already decided during the course of a single continuing lawsuit; it is not a limit on their power. *Locricchio v Evening News Ass'n*, 438 Mich 84, 109; 476 NW2d 112 (1991). Thus, appellate courts may decline to apply the law of the case to avoid injustice, especially in criminal cases. *People v Herrera*, 204 Mich App 333, 340-341; 514 NW2d 543 (1994). However, defendant here has failed to persuade us that we should revisit the issue.

Affirmed.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Jonathan Tukel

---

[3] The Michigan Supreme Court later denied defendant's application for leave to appeal because it was "not persuaded that the questions presented should be reviewed by this Court." *People v Sheena*, 500 Mich 927 (2017).